2010 ND 26

**Kathy WOLT, Plaintiff and Appellee**

**v.**

**Steve WOLT, Defendant and Appellant.**

**No. 20090103.**

Supreme Court of North Dakota.

Feb. 17, 2010.

Rehearing Denied March 16, 2010.

Suzanne Marie Schweigert, Bismarck, N.D., for plaintiff and appellee.

Justin Dale Hager, Bismarck, N.D., for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Steve Wolt appeals from a judgment granting a divorce from Kathy Wolt. Because we conclude the district court did not clearly err in awarding custody or visitation, or in distributing the parties' marital estate, we affirm.

I

[¶ 2] Kathy and Steve Wolt were married in October 1994 and have three minor children together, born in 1995, 1997, and 2003. In 2008, Kathy Wolt commenced this divorce action against Steve Wolt.

[¶ 3] At the time of the January 2009 trial, Steve Wolt was 43 years old, and Kathy Wolt was 39 years old. Steve Wolt testified that he is the president and sole shareholder of Wolt Transport, Inc., a trucking company, and that his 2008 salary from the corporation was about $47,000. After trial, he submitted a copy of his 2008 W–2 stating his actual wages were $31,700, which the court considered for purposes of calculating child support. In an amended N.D.R.Ct. 8.3 property and debt listing, Steve Wolt listed the value of Wolt Transport, stock as $0, while Kathy Wolt asserted a value of $1,000. Based on evidence the corporation had a negative net worth, the court valued the stock at $0, and awarded it to Steve Wolt.

[¶ 4] Kathy Wolt testified that she is employed at Aetna Insurance Company, where she had been employed before the marriage. Kathy Wolt's 2008 W–2 showed her 2008 gross income as $33,872. She testified this was the fourth time she had filed for divorce during the marriage and she had dismissed the first divorce action when she saw "a little change" in Steve Wolt. She testified she dismissed the second divorce action when she found out she was pregnant and dismissed the third divorce action to keep the family together.

[¶ 5] The district court awarded Steve Wolt property valued at $182,190 and debts of $38,308. The court awarded Kathy Wolt property valued at $71,034 and debts of $21,502. The court then ordered Steve Wolt to pay $47,177 to Kathy Wolt to equalize the property division, awarding $96,709 to each party. The court awarded custody of the three minor children to Kathy Wolt and granted Steve Wolt two one-hour sessions of supervised visitation

per week at the Family Safety Center at his expense. The court limited Steve Wolt to one 20–minute phone call with the children at 8:30 p.m. on Tuesday and Thursday evenings each week to be monitored by Kathy Wolt. The court also ordered the children not be allowed to call Steve Wolt more than once a week and for no more than 20 minutes. The court ordered Steve Wolt to pay child support to Kathy Wolt in accordance with the child support guidelines.

## II

■ [¶ 6] Steve Wolt argues that the district court erred as a matter of law in awarding custody of the children to Kathy Wolt.

■ [¶ 7] "A district court's award of custody is treated as a finding of fact and, on appeal, will not be reversed unless it is clearly erroneous under N.D.R.Civ.P. 52(a)." *Wessman v. Wessman,* 2008 ND 62, ¶ 12, 747 N.W.2d 85. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made." *Lindberg v. Lindberg,* 2009 ND 136, ¶ 4, 770 N.W.2d 252 (quotations omitted). Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and " 'we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result.' " *Id.* (quoting *Jelsing v. Peterson,* 2007 ND 41, ¶ 11, 729 N.W.2d 157).

■ [¶ 8] In an initial custody decision, the district court is required to award custody of the children to the person who will better promote the best interest and welfare of the children. N.D.C.C. § 14–09–06.1; *Lindberg,* 2009 ND 136, ¶ 5, 770 N.W.2d 252; *Klein v. Larson,* 2006 ND 236, ¶ 7, 724 N.W.2d 565. In deciding the children's best interests, the "court must consider all [relevant] factors specified in N.D.C.C. § 14–09–06.2(1)." *Schmidt v. Schmidt,* 2003 ND 55, ¶ 6, 660 N.W.2d 196. At the time of the district court's custody decision, N.D.C.C. § 14–09–06.2(1)[1] outlined the following factors for assessing the best interests and welfare of the child:

a. The love, affection, and other emotional ties existing between the parents and child.

b. The capacity and disposition of the parents to give the child love, affection, and guidance and to continue the education of the child.

c. The disposition of the parents to provide the child with food, clothing, medical care, or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.

d. The length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity.

e. The permanence, as a family unit, of the existing or proposed custodial home.

f. The moral fitness of the parents.

g. The mental and physical health of the parents.

h. The home, school, and community record of the child.

---

1. Chapter 14–09, N.D.C.C., was subsequently amended effective August 1, 2009. Custody is now called "primary residential responsibili-ty" and visitation is called "parenting time." *See* 2009 N.D. Sess. Laws ch. 149.

i. The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.

j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards custody to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1.

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular child custody dispute.

[¶ 9] "The district court has substantial discretion in making a custody determination, but it must consider all of the factors under N.D.C.C. § 14–09–06.2(1)(a)–(m)." *Brown v. Brown,* 1999 ND 199, ¶ 11, 600 N.W.2d 869. Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision. *Id.* Further, the district court has the discretion in deciding what weight to assign a custody investigator's conclusion, and the court need not follow a custody investigator's recommendation. *See Sailer v. Sailer,* 2009 ND 73, ¶ 34, 764 N.W.2d 445; *L.C.V. v. D.E.G.,* 2005 ND 180, ¶ 4, 705 N.W.2d 257. We have explained the dis-

trict court should take a custody investigator's report into consideration and come to its own conclusion. *Sailer*, at ¶ 34; *Hanson v. Hanson*, 2005 ND 82, ¶ 11, 695 N.W.2d 205.

[¶ 10] Additionally, this Court has said that "[e]vidence of parental alienation is a significant factor in determining custody." *Brown*, 1999 ND 199, ¶ 21, 600 N.W.2d 869 (citing *Loll v. Loll*, 1997 ND 51, ¶ 16, 561 N.W.2d 625). "A party 'who willfully alienates a child from the other parent may not be awarded custody based on that alienation.' " *Brown*, at ¶ 21 (quoting *McAdams v. McAdams*, 530 N.W.2d 647, 650 (N.D.1995)).

[¶ 11] In this case, the district court considered the statutory best interest factors in making its initial custody determination and made specific findings for each factor. The court found that factors (a), (b), (d), (f), (g), (j), and (m) favored Kathy Wolt and that factors (c), (e), (h), (k), and (*l*) favored neither parent. The court found that only factor (i) regarding the children's preference favored Steve Wolt. Steve Wolt argues the court erred finding factors (a), (b), (d), (f), (j), and (m), favored Kathy Wolt. He also asserts greater deference should have been given to the children's preference under factor (i).

[¶ 12] In making its child custody decision, the district court stated, "In the many divorces and family matters this Court has handled as a lawyer and as a judge, this is simply the worst child custody case the Court has ever seen." The court found credible evidence of alienation by Steve Wolt, in that the two older children were totally alienated from their mother and the youngest child would also succumb to alienation if the parenting situation continued. In its custody analysis,

the court provided an extensive discussion of the evidence presented at trial.

[¶ 13] The district court heard testimony from a licensed social worker, who had attempted to provide in-home family therapy to Kathy Wolt and the children, but testified that the children were disrespectful to their mother and would not participate. The social worker noted an excessive number of telephone calls between Steve Wolt and the children. The social worker concluded Steve Wolt had been abusive to Kathy Wolt and the children and recommended individual counseling with the children. The social worker recommended that Kathy Wolt have custody, with Steve Wolt having supervised visitation with no unsupervised phone calls between the children and Steve Wolt.

[¶ 14] There was evidence about telephone calls, including phone records and a transcript of several phone calls between Kathy Wolt and Steve Wolt, in which the court found he verbally abused her. The court also considered a recording of several hours of phone calls between Steve Wolt and the children. The court found the recorded calls demonstrated Steve Wolt excessively engaged in telephone calls with the children when they were in Kathy Wolt's custody and Steve Wolt was involving the children in the divorce and was not being supportive of the children when they were with her. The court found Steve Wolt undermined Kathy Wolt, telling the children that they did not have to do what she said, that something was wrong with her, that they should not talk to her and go to their rooms, and that he generally used an authoritative voice when talking with the children. The court also found Steve Wolt told the children Kathy Wolt was simply trying to control them and that she is sick.

[¶ 15] The district court heard testimony from a Morton County deputy sheriff who testified regarding several calls to Kathy Wolt's home when law enforcement encountered Steve Wolt. The deputy testified that Steve Wolt made an alleged threat toward another officer, that Steve Wolt was usually angry, excited, and not pleasant, and that Steve Wolt had accused a deputy of having an affair with Kathy Wolt. The deputy testified that he was "a little concerned" about Steve Wolt.

[¶ 16] Kathy Wolt testified that Steve Wolt is a very jealous person and that he called her profane names in front of the children. She testified that Steve Wolt was usually very angry and had physically abused her twelve years earlier when he gave her a black eye. Although Steve Wolt denied giving her a black eye, the court found Kathy Wolt's testimony to be truthful and that she had suffered verbal abuse. Kathy Wolt also testified that before the divorce she had a good relationship with the children, but after the divorce began, the children have treated her with disrespect and refused to listen to her.

[¶ 17] The district court heard conflicting testimony from school teachers, other family members, as well as counselors. The court found Steve Wolt admitted he has an anger problem, and noted Steve Wolt's testimony regarding high stress and anxiety in the trucking business. Steve Wolt also admitted calling Kathy Wolt profane names. The court found Steve Wolt told the children they did not need to talk to Kathy Wolt and that she was abusing them.

[¶ 18] The district court heard testimony from Steve Wolt's private practice counselor, who testified about her sessions with him. Steve Wolt has depression and anxiety, but she saw Steve Wolt as a good father, and that his lowest points of depression occur when the children call him with pleas for help. She also testified that in March 2008, Steve Wolt had discussed trying to harm himself, but that treatment had helped and he is no longer suicidal. The court, however, found that the counselor's observations about Kathy Wolt were not entitled to great weight since they were premised on what Steve Wolt had told her, rather than independent observation.

[¶ 19] The district court interviewed the two oldest children separately, and both children expressed a strong preference to live with Steve Wolt. However, the court questioned the children's maturity because they did not understand their disrespectful treatment of Kathy Wolt. The court found the children had no understanding of the need for both parents and have "appear[ed] to have completely taken Steve's advice that they do not have to talk to Kathy."

[¶ 20] Additionally, a court-appointed child custody investigator testified and filed a report that the court described as excellent. In its child custody decision, the court extensively discussed testimony from the court-appointed custody investigator, who concluded that Steve Wolt's phone calls with the children were excessive and intrusive of Kathy Wolt's custodial time. The custody investigator's report stated Steve Wolt reported calling the children 20 to 50 times a day and telephone records "show[ed] many calls" to and from the children with 30 telephone calls some days. The custody investigator testified the children were extremely polite with her and other adults but acted awfully toward Kathy and that the children had developed a single parenting relationship

with Steve to the exclusion of Kathy Wolt. The custody investigator testified the children had lost the normal range of feelings with Kathy Wolt. The investigator also testified the children were wonderful with good social skills, Steve Wolt cares about his children, and the children are well behaved with Steve Wolt.

[¶ 21] The district court considered the custody investigator's report which, the court found, revealed that since the beginning of the divorce and entry of an interim order, Steve Wolt has systematically turned the children against Kathy Wolt and documented Steve Wolt's efforts to alienate the children. The custody investigator's report stated that Steve Wolt loves his children but did not understand the damage being done to them by placing them in the middle of the parties' divorce. The court nevertheless found deliberate alienation by Steve Wolt:

> Steve's conduct and his deliberate alienation of the children from their mother shows anything but love for his children. The Court also finds that Steve has caused grievous damage to the children by his conduct that will require extensive therapy to repair, if it even can be repaired at this point. The Court finds that Steve understands exactly the damage he is doing to the children in terms of their relationship with their mother as he clearly intends for them to have nothing more to do with Kathy as he finally takes full control of his children.

The district court also analyzed each of the statutory best interest factors for awarding custody under N.D.C.C. § 14–09–06.2.

[¶ 22] Steve Wolt argues the district court should have given greater weight and credibility to evidence favoring him in its analysis of the best interest factors.

## A

[¶ 23] Steve Wolt argues the district court incorrectly decided factor (a) favored Kathy Wolt. Factor (a) requires the court to look at "[t]he love, affection, and other emotional ties between the parents and child." N.D.C.C. § 14–09–06.2(1)(a). Steve Wolt argues this factor should have favored him. He asserts that even if the court found he alienated the children, the children's relationship with the parents is one-sided and that the children undeniably have a greater bond with him.

[¶ 24] The district court found, however, that Kathy Wolt loves the children, but is not respected by them because of Steve Wolt's encouragement, including giving them permission to ignore her, not talk to her, and not do what she tells them. The court found that although Steve Wolt claims to love the children, his conduct has damaged the relationship between Kathy Wolt and the children. The court characterized Steve Wolt's love as "possessive and mean spirited," and found the emotional ties between Kathy Wolt and the children have been damaged by his conduct.

[¶ 25] We have explained a parent may not benefit from conduct alienating the children from the other parent. *See Brown*, 1999 ND 199, ¶ 21, 600 N.W.2d 869; *McAdams*, 530 N.W.2d at 650. We conclude the district court did not clearly err in finding factor (a) favored Kathy Wolt.

## B

[¶ 26] Steve Wolt argues the district court incorrectly decided that factor (b) favored Kathy Wolt. Factor (b) requires a court to consider "[t]he capacity and dispo-

sition of the parents to give the child love, affection, and guidance and to continue the education of the child." N.D.C.C. § 14–09–06.2(1)(b). Steve Wolt argues this factor should have favored him because Kathy Wolt has completely lost control of the children and has "tried to supplant the police into her role as parent." He emphasizes that she has no control over the children, while he has made time for the children. However, the district court found that although Kathy Wolt and Steve Wolt both have the capacity to continue the children's education, "Steve has demonstrated neither the capacity nor the disposition to give the children true and unselfish love and affection." The court found Steve Wolt has severely damaged the children and that, based on his conduct, the children have not allowed Kathy Wolt to show them the love and affection she has for them. The district court's finding that factor (b) favored Kathy Wolt is supported by evidence and is not clearly erroneous.

### C

[¶ 27] Steve Wolt argues the district court incorrectly decided factor (d) favored Kathy Wolt. Factor (d) requires a court to consider "[t]he length of time the child has lived in a stable satisfactory environment and the desirability of maintaining continuity." N.D.C.C. § 14–09–06.2(1)(d). He argues the evidence shows that Kathy Wolt's living environment was tumultuous and not stable, and asserts the children would need serious counseling if they were to continue to live with her. He argues that she uprooted the children during the three prior divorce filings, that police reports show the instability, and that the two older children had both run away from her. He asserts he has a good relationship with the children, the police have not been called to his

residence, and the children have not run away from him. He argues the custody investigator also testified the children were great when they were away from their mother.

[¶ 28] The district court, however, found that Kathy Wolt had provided a stable and satisfactory home for the children until Steve Wolt's "unrelenting negative messages to the children caused them to completely disrespect their mother." The court essentially found that the stable and satisfactory environment the children had before the divorce had been completely destroyed by Steve Wolt's conduct. The court's analysis demonstrates its concern for the children based on Steve Wolt's alienating conduct. In applying factor (d), the district court should analyze the " 'past stability of environment, including a consideration of place or physical setting, as well as a consideration of the prior family unit and its lifestyle as a part of that setting. [The factor also addresses] the quality of that past environment, and the desirability of maintaining continuity.' " *Shaw v. Shaw*, 2002 ND 114, ¶ 7, 646 N.W.2d 693 (quoting *Stoppler v. Stoppler*, 2001 ND 148, ¶ 9, 633 N.W.2d 142). Prior custody is also considered when determining the custodial arrangement which is best for the child. *Id.* There is evidence Kathy Wolt had provided a stable and satisfactory home for the children until the parties' separation and the divorce proceedings. We conclude the district court's finding that factor (d) favored Kathy Wolt is supported by evidence and is not clearly erroneous.

### D

[¶ 29] Steve Wolt argues the district court incorrectly decided factor (f) favored Kathy Wolt. Factor (f) requires

the court to consider "[t]he moral fitness of the parents." N.D.C.C. § 14-09-06.2(1)(f). He argues that this factor should have favored either him or neither party. Steve Wolt argues that if alienation were the main issue, Kathy Wolt admitted she had purposely cut off the children's contact with him, took the children during his parenting time, and withheld important information from him. He asserts the district court should have also considered that Kathy Wolt dropped him from the family health insurance while the divorce was pending, cashed one of her IRAs worth $20,000 and placed the money in her sister's account, and did not know where $2,000 out of a $7,000 401(k) loan went. However, the district court found that the "only moral fitness issue" is Steve Wolt's conduct in turning the children against their mother which, the court found, called into question Steve Wolt's sense of morality and of right and wrong. Although this Court may have given different weight to the evidence regarding the moral fitness of the parents, we will not reweigh the testimony and we defer to the district court's opportunity to observe and assess witness credibility. *See Dronen v. Dronen,* 2009 ND 70, ¶ 12, 764 N.W.2d 675. We conclude the district court's finding that factor (f) favored Kathy Wolt is not clearly erroneous.

**E**

[¶ 30] Steve Wolt argues although the district court correctly found factor (i) favored him, the court should have given this factor more weight. Factor (i) requires the court to consider the "reasonable preference of the child." N.D.C.C. § 14-09-06.2(1)(i). Steve Wolt argues the evidence shows the children were well-adjusted, doing well in school, and of a sufficient age to make a choice.

[¶ 31] The district court found that the two oldest children clearly wanted to live with Steve Wolt, which favors him. However, the court doubted the children's maturity and questioned whether they understood how they had been manipulated by Steve Wolt. When the court interviewed the children, they expressed a desire to be with Steve Wolt. The children's testimony also plainly reflected the district court's concern that they did not fully comprehend their poor treatment of Kathy Wolt, simply stating that she was either mean or did not let them do what they wanted to do. We will not reweigh the evidence and we conclude the district court's evaluation of factor (i) is not clearly erroneous.

**F**

[¶ 32] Steve Wolt argues the district court completely misapplied the law for factor (j) on domestic violence, by incorrectly finding this factor favored Kathy Wolt. Steve Wolt argues there is conflicting evidence about an incident of domestic violence in which he struck Kathy Wolt 12 years ago. He also claims there is evidence of a more recent episode of domestic violence in April 2008, when Kathy Wolt hit his head with a phone during an altercation. Kathy Wolt acknowledges the court did not find the evidence of domestic violence triggered the rebuttable presumption for custody, but asserts the court properly considered the issue under the best interest factors. Kathy Wolt testified regarding her version of the recent incident and also testified to an incident where Steve Wolt allegedly attempted to run her off the road while one of the children was in her car. She testified there had been verbal and emotional abuse as well.

[¶ 33] Section 14-09-06.2(1)(j), N.D.C.C., establishes a rebuttable pre-

sumption that a parent who has perpetuated domestic violence may not be awarded custody. Under N.D.C.C. § 14–09–06.2(1)(j), evidence of domestic violence that does not trigger the presumption may be considered in awarding custody. *See Brown*, 1999 ND 199, ¶ 17, 600 N.W.2d 869. However, name calling is not included in the definition of domestic violence. *See* N.D.C.C. §§ 14–09–06.2(1)(j) and 14–07.1–01(2). In this case, the district court considered the evidence of domestic violence and found, "Although Steve and Kathy have both at times struck out at one another, the Court does find that Steve committed domestic violence against Kathy when he struck her causing her to have a black eye. This factor favors Kathy." Steve Wolt concedes Kathy Wolt's actions may not have risen to the level of domestic violence sufficient to trigger the presumption against her. He argues however the district court should have given greater weight to the evidence of her actions. We conclude the district court did not misapply the law in finding the factor favored Kathy Wolt and that the domestic violence presumption was not triggered in this case. The district court's finding that factor (j) favored Kathy Wolt is not clearly erroneous.

G

[¶ 34] Steve Wolt argues that the district court incorrectly decided that factor (m) favored Kathy Wolt. Factor (m) permits the court to consider "[a]ny other factors ... relevant to a particular child custody dispute." N.D.C.C. § 14–09–06.2(1)(m). Steve Wolt claims this factor should have favored either him or neither party. He asserts any name calling went both ways. He acknowledges the court found he had an excessive need to call the children when they were with Kathy, but argues the calls were brief in nature and the children also had a right to have their preference heard. Steve Wolt argues the court's finding his love was "possessive and mean spirited" is not supported by the evidence and the court's finding was "disingenuous." Steve Wolt argues that his counselor's opinions, particularly suggesting that the alienation goes both ways, should have been given more weight. He also suggests the court's decision to award custody to Kathy Wolt was driven in part by gender bias in favor of her.

[¶ 35] Steve Wolt's arguments are meritless. The court acknowledged that although it would be difficult for Kathy Wolt and the children and would take a great deal of family and individual child therapy, it could not reward Steve Wolt's alienating conduct by awarding him custody of the children. The court decided Steve Wolt's conduct was a major factor in its decision. The district court's finding that factor (m) favored Kathy Wolt is not clearly erroneous.

[¶ 36] Based upon our review of the evidence, we hold that the district court's findings of fact were not induced by an erroneous view of the law. We are not left with a definite and firm conviction a mistake has been made, and we therefore conclude the court did not clearly err in awarding custody of the three minor children to Kathy Wolt.

III

[¶ 37] Steve Wolt argues that the district court erred as a matter of law in its award of visitation.

[¶ 38] The district court's decision on visitation is a finding of fact reviewed under the clearly erroneous standard of review. *Bertsch v. Bertsch*, 2006

ND 31, ¶ 5, 710 N.W.2d 113; *Wigginton v. Wigginton*, 2005 ND 31, ¶ 8, 692 N.W.2d 108. "In awarding visitation to the noncustodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Bertsch*, at ¶ 5. A non-custodial parent's visitation may be "curtailed or eliminated entirely if it is likely to endanger the child's physical or emotional health." *Marquette v. Marquette*, 2006 ND 154, ¶ 9, 719 N.W.2d 321. "However, a restriction on visitation must be based on a preponderance of the evidence and be accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation." *Id.* Additionally, the court cannot delegate the power to decide child custody questions or related issues. *Id.* at ¶ 10; *see also Sailer*, 2009 ND 73, ¶ 34, 764 N.W.2d 445.

[¶ 39] Here, the district court said it had "no confidence Steve understands the situation in which he has placed the children. Therefore, until satisfactory progress can be shown in family and individual therapy with the children, Steve's visitation with the children will be limited and supervised." The court awarded Steve Wolt two one-hour sessions of supervised visitation per week at the Family Safety Center and limited him to one 20–minute phone call with the children on Tuesday and Thursday evenings, which are to be monitored by Kathy Wolt. Additionally, the children are not permitted to call Steve Wolt more than once a week and for no more than 20 minutes. Considering the evidence of Steve Wolt's excessive telephone calls with the children and corresponding interference with Kathy Wolt's custody, we are not left with a definite and firm conviction that the district court made a mistake in its award of limited visitation to Steve Wolt.

[¶ 40] The district court's visitation award also included the following provision: "When the counselors make a recommendation to the Court for more and less restrictive visitation, the Court will consider a new and increased visitation schedule." On appeal, Steve Wolt argues this provision is an improper delegation of the court's authority to unnamed counselors to decide when a change in circumstances occurs. We, however, construe this provision as simply permitting the counselors to make recommendations to the district court, which the court would consider in any future visitation decision. We do not construe this provision as placing an additional limitation on Steve Wolt's access to the court in seeking a change in the visitation schedule nor as an improper delegation.

[¶ 41] We conclude that the district court did not clearly err in its award of visitation to Steve Wolt.

IV

[¶ 42] Steve Wolt argues that the district court erred as a matter of law in the valuation and disposition of the marital estate.

[¶ 43] The district court's valuation and division of property are findings of fact, subject to the clearly erroneous standard of review. *Marquette*, 2006 ND 154, ¶ 13, 719 N.W.2d 321; *Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 8, 714 N.W.2d 845.

The value a trial court places on marital property depends on the evidence presented by the parties. Because a trial court is in a far better position than an appellate court to observe demeanor and credibility of witnesses, we presume a trial court's property valuations are correct. We will not reverse a trial court's findings on valuation and division

of marital property unless they are clearly erroneous.

*Olson v. Olson,* 2002 ND 30, ¶ 7, 639 N.W.2d 701 (citations omitted). The district court's marital property valuations are not clearly erroneous if they are within the range of evidence presented. *Amsbaugh v. Amsbaugh,* 2004 ND 11, ¶ 12, 673 N.W.2d 601. A real property owner may testify as to the value of land without any further qualification or special knowledge. *Anderson v. Anderson,* 368 N.W.2d 566, 569 (N.D.1985). "Ultimately, the district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses and to determine property values." *Kostelecky,* at ¶ 9.

[¶ 44] " 'When distributing marital property, all of the party's assets must be considered to insure the division is equitable.' " *Donlin v. Donlin,* 2007 ND 5, ¶ 11, 725 N.W.2d 905 (quoting *Kostelecky,* at ¶ 12). Under the *Ruff–Fischer* guidelines, the court must consider:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Kostelecky,* at ¶ 12. Although the court's property division need not be equal to be equitable, the court must explain a substantial disparity. *Donlin,* at ¶ 11. "This Court has also recognized that a long-term marriage supports an equal distribution of property." *Id.*

[¶ 45] Steve Wolt primarily argues about the weight and credibility of the evidence regarding the proper valuation and distribution of the marital property. He claims the court erred in the valuation of the corporate stock in the closely-held transportation company, Wolt Transport. Kathy Wolt asserts that any difficulty in valuing the corporation was due to Steve Wolt's failure to provide discovery. Steve Wolt asserts that both parties listed the corporate assets and debts separately in the parties' property and debt listing and, further, "assumed" the court could easily "pierce the veil of the corporation" because it was closely held by only him.

[¶ 46] The district court found that although the parties included the company's assets and debts on their property and debt listing, the only item of the company properly part of the marital estate was the corporate shares. The court found that the corporation had a negative net worth of $82,454. Based on this negative net worth, the court found the stock had no value. The court found, however, the ownership and operation of the company would provide Steve Wolt an income stream of $31,700 per year. Steve Wolt argues the negative net worth should have been included on the parties' property and debt listing, and the court erred in simply reducing the value of the stock to zero. The court, however, specifically found that Steve Wolt offered no testimony that he was personally liable for the corporation's debts. Based upon our review, we conclude the district court did not clearly err in valuing the shares of Wolt Transport.

[¶ 47] Steve Wolt also argues that the district court erred in valuing the marital home at $159,000 because the court's value was higher than either party's testimony. However, the court ac-

cepted the testimony of a realtor who provided a market analysis and valued the home at $162,000. The court reduced the value by $3,000 based on testimony of a damaged garage door and leaky skylights. We conclude the valuation of the home is within the range of evidence adduced at trial.

[¶ 48] In distributing the property, the district court provided an analysis under the *Ruff-Fischer* guidelines. The court considered the parties' ages and found their earning ability was not substantially different. The court found their marriage was of long duration and found that Steve Wolt was the dominant partner in the marriage, largely controlling the lives of Kathy Wolt and the children. The court found they had a modest standard of living and the necessities were consistent with that modest standard. Kathy Wolt testified she was in good health and Steve Wolt testified he was now in good health, but had previously been treated successfully for cancer. The court found that Steve Wolt had been seeing a counselor and a psychiatrist for depression and anxiety and occasionally took medication for these conditions. The court found no evidence that their personal and real property had not been accumulated during their marriage. The court then arrived at an equal division of the marital estate and awarded $96,709 to each party. This distribution included a $47,177 payment from Steve Wolt to Kathy Wolt when she moved from the marital home, which the court awarded to Steve Wolt. Although Steve Wolt also argues the court should have given greater consideration to Kathy Wolt's purported economic fault during the marriage, we conclude the district court did not clearly err in either valuing or distributing the Wolts' marital property.

[¶ 49] Steve Wolt argues on appeal that the children's college fund, which the district court did not include in the marital estate, either should be included in Kathy Wolt's share of the marital estate or additional language should be added to the divorce judgment, preventing Kathy Wolt from simply distributing the funds to herself. Kathy Wolt, however, asserts the court properly found the college fund belonged to the children and thus should not have been included in the marital estate. She also argues that Steve Wolt is precluded from raising this issue on appeal or requesting this Court to amend the judgment since he failed to raise the issue to the district court. The record does not reflect that Steve Wolt raised this in the trial court. *See Rutherford v. BNSF Ry. Co.*, 2009 ND 88, ¶ 13, 765 N.W.2d 705 ("It is axiomatic that an issue or contention not raised or considered in the lower court cannot be raised for the first time on appeal from judgment." (Quotations omitted.)). We decline to address this argument on appeal.

[¶ 50] Steve Wolt also essentially argues that the initial custody investigator fees of $2,500 should have been subject to distribution as a marital debt, because the district court's order appointing the custody investigator required Steve Wolt to pay the investigator's initial fees and stated the payment would be treated as a marital debt subject to equitable distribution. After trial, however, the court did not include the initial fee paid by Steve Wolt as a marital debt. Instead, in its memorandum opinion, the court acknowledged Steve Wolt paid the custody investigator's initial fee and his argument that Kathy Wolt should be responsible for any subsequent fees including the investigator's time in court since Kathy Wolt had the investigator testify at trial. Nonetheless, the court concluded, "Any such fees are proper trial

costs." We are not persuaded the district court erred in characterizing the investigator's fees as costs.

## V

█ [¶ 51] Relying on N.D.R.App.P. 13, Kathy Wolt requests an award of attorney fees and costs and dismissal of Steve Wolt's appeal based on his failure to include a statement of the facts in his appellate brief as required under N.D.R.App.P. 28(b). Under N.D.R.App.P. 13, this Court "may take appropriate action against any person failing to perform an act required by rule or court order." Although we recognize that Kathy Wolt may have incurred additional fees to draft a separate complete statement of facts, we deny her request.

[¶ 52] Steve Wolt, on the other hand, objects to Kathy Wolt's supplemental appendix and moves this Court to strike her supplemental appendix and redact any references in the appellee's brief. Steve Wolt also requests this Court to sanction Kathy Wolt under N.D.R.App.P. 13, because her supplemental appendix "only further complicated this already complex matter" and "the information is irrelevant and should not be considered." Steve Wolt does not specify which, if any, information was outside of the record. Further, Kathy Wolt submitted a responsive affidavit from her attorney's legal assistant, which states that the assistant attempted to cooperate in including items in the appellant's appendix, but was refused by Steve Wolt's attorney and required a supplemental appendix.

[¶ 53] We conclude Steve Wolt's motion to strike the supplemental appendix is frivolous and particularly egregious considering his own failure to follow the appellate rules. We therefore impose sanctions of $500 in costs against Steve Wolt's attorney, payable to Kathy Wolt.

## VI

[¶ 54] We have considered the remaining arguments and issues raised by Steve Wolt and determine they are either unnecessary to our decision or without merit. The district court judgment is affirmed.

[¶ 55] MARY MUEHLEN MARING, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

GERALD W. VANDE WALLE, C.J., *concurs in the result.*