2016 ND 40

**Bradley BROUILLET, Plaintiff and Appellee**

v.

**Marsha BROUILLET, Defendant and Appellant.**

No. 20150097.

Supreme Court of North Dakota.

Feb. 18, 2016.

Bradley Brouillet, Grand Forks, N.D., for plaintiff and appellee; on brief.

Timothy C. Lamb, Grand Forks, N.D., for defendant and appellant; on brief.

SANDSTROM, Justice.

[¶ 1] Marsha Brouillet appeals from a divorce judgment that granted primary residential responsibility for the parties' two younger children to Bradley Brouillet, awarded him child support, and divided the parties' marital estate. We conclude the district court's award of primary residential responsibility for the two children, finding of Marsha Brouillet's income in

awarding child support, and distribution of marital assets and debts are supported by the record. We affirm.

## I

[¶2] Bradley and Marsha Brouillet were married in September 2008. He was 33, and she was 32 years old at the time of trial. The parties had resided together since 2002, separating in 2013, and had two children together, born in 2010 and 2006. Marsha Brouillet also had a child born in 2003. At the time of trial, the oldest child believed Bradley Brouillet was her biological father, but in fact she has a different biological father, who is subject to a child support obligation. In October 2013, Bradley Brouillet sued for divorce. In December 2014, the district court held a two-day bench trial.

[¶3] The district court entered a divorce judgment dividing the parties' assets and debts, granting Bradley Brouillet primary residential responsibility for the younger two children with Marsha Brouillet receiving parenting time, and ordering her to pay child support. While Marsha Brouillet retained primary residential responsibility for the oldest child, the court granted Bradley Brouillet parenting time with the oldest child as the child's psychological parent.

[¶4] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶5] Marsha Brouillet argues the district court erred in applying the best interest of the child factors for determining primary residential responsibility for the two younger children by granting Bradley Brouillet primary residential responsibility.

[¶6] Section 14–09–06.2(1), N.D.C.C., provides factors for evaluating the best interests and welfare of the child in awarding primary residential responsibility. The best-interest factors include:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of

the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j.  Evidence of domestic violence....

k.  The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests....

l.  The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m.  Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

N.D.C.C. § 14–09–06.2(1).

[¶ 7]  Our standard of review on appeal from the district court's decision on primary residential responsibility is well-established:

[The district] court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous or it is not sufficiently specific to show the factual basis for the decision. *See, e.g., Rustad v. Rustad*, 2013 ND 185, ¶ 5, 838 N.W.2d 421; *Wolt v. Wolt*, 2010 ND 26, ¶ 7, 778 N.W.2d 786. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made." *Doll v. Doll*, 2011 ND 24, ¶ 6, 794 N.W.2d 425. "Under the clearly erroneous standard, we do not reweigh

the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Wolt*, at ¶ 7 (quotation marks omitted). The district court has substantial discretion in making a custody determination, but it must consider all of the best-interest factors. *Id.* at ¶ 9. "Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision." *Id.*

*Schlieve v. Schlieve*, 2014 ND 107, ¶ 8, 846 N.W.2d 733.

[¶ 8]  Marsha Brouillet argues the district court erred in granting Bradley Brouillet primary residential responsibility, because it is in the children's best interest to be with her. She argues the court erred by splitting the primary residential responsibility of the three minor children between the parents, awarding the oldest to her and the younger two children to the father. She also contends the court erred in giving inadequate weight to the testimony of the oldest daughter.

[¶ 9]  Marsha Brouillet essentially argues on appeal that the district court's findings under the factors are clearly erroneous or the court improperly weighed the testimony. She argues the court erred in considering specific items under factor (m), such as her smoking, her previous child abuse conviction, and her decision to call the oldest child as a witness, because those issues should have been considered under other "germane" factors.

[¶ 10]  She argues the district court also erred in applying the "moral fitness" factor (f), contending the court's specific examples of her dishonesty did not specifical-

ly impact the children. She asserts it is "difficult to understand the court's analysis" as to why factors (a) and (d) favor Bradley Brouillet, arguing the district court confused the definitions and misapplied the intended purpose of the factors. She contends it is not a gender argument to assert that as a "psychological factor" the young children are more likely to have a greater bond with their mother or primary caretaker. She argues the court erred in splitting up the three minor children and should have awarded her primary residential responsibility for all three. She asserts the court gave inadequate weight to the oldest child's testimony regarding Bradley Brouillet's residence with his parents.

[¶ 11] The district court, however, explicitly considered and made findings on the factors under N.D.C.C. § 14–09–06.2(1). In its analysis based on the evidence from trial, the court found that factors (b), (c), (e), (g), and (h) weighed evenly between the parties; factors (a), (d), (f), and (m) weighed in favor of Bradley Brouillet; factor (k) weighed in favor of Marsha Brouillet, and factors (i), (j), and (*l*) did not apply. The court also gave heightened consideration to factor (k) based on the separation of the oldest child from her siblings. The district court found that the impact of the separation would be lessened by a parenting plan which provides continuing interaction of the children and that the father demonstrated stability and willingness to provide appropriate guidance, as opposed to the mother's poor judgment. The court found that, "while not ideal," the father should have primary residential responsibility for the younger two children.

[¶ 12] We have said a district court generally does not need to do a "line-by-line best-interest analysis" for each individual child. *Schlieve*, 2014 ND 107,

¶ 25, 846 N.W.2d 733. "When the factors are in fact different for each child, then such an analysis is permissible and under some circumstances may be necessary; nevertheless, courts should be cautious about dividing custody of children." *Id.* (citing *Gravning v. Gravning*, 389 N.W.2d 621, 622–23 (N.D.1986) ("courts are cautious about dividing custody of children"); *Stoppler v. Stoppler*, 2001 ND 148, ¶ 7, 633 N.W.2d 142 ("split custody of siblings is generally disfavored")). Here the court explained, while it weighed factor (k) in favor of Marsha Brouillet, that weight was tempered by several facts:

> First, this case is procedurally uncommon. [The oldest child] has been raised in the home as if she was Bradley's biological daughter and she is unaware that Bradley is not her father. Bradley has conceded his assertion that he should have primary residential responsibility for [the oldest child], not because that is not his desire, but after evaluating the onerous burden that he would be required to satisfy he decided not to pursue primary residential responsibility. In large part, Bradley had hoped that by dropping his request for primary residential responsibility Marsha would forego calling [the oldest child] as a witness. As discussed below, Marsha still called [the oldest child] to testify.

> Second, the undersigned concludes that Bradley should be provided with parenting time with [the oldest child].... Bradley has provided [the oldest child] with daily care, has developed a close bond, and developed a personal relationship. [The oldest child] often turns to Bradley for love, guidance and security. Bradley is a psychological parent and parenting time for [the oldest child] with Bradley is appropriate.

[¶ 13] While the district court's decision in this case divides custody of the

children, the court thoroughly explained its decision and acknowledged the difficulty in light of the oldest child's different paternity. We also understand the court's award of parenting time for the oldest child to maintain and facilitate the oldest child's relationship with the two younger children and with Bradley Brouillet. *See, e.g., McAllister v. McAllister,* 2010 ND 40, ¶¶ 15–16, 779 N.W.2d 652 (stepfather was child's psychological parent); *Edwards v. Edwards,* 2010 ND 2, ¶ 10, 777 N.W.2d 606 (stepfather was the only father the child had known and had been the child's father "in every sense of the word").

█ [¶ 14] Further, while Marsha Brouillet argues the district court did not give proper weight to the oldest child's testimony, the court specifically considered her testimony, finding it lacked maturity and did not significantly favor her mother, her preference with whom to live had limited relevance, and her responses were general in nature and did not provide information that was unavailable from other witnesses. "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Schlieve,* 2014 ND 107, ¶ 23, 846 N.W.2d 733 (quoting *Wolt,* 2010 ND 26, ¶ 7, 778 N.W.2d 786 (quotation marks omitted)).

█ [¶ 15] On the basis of our review, we conclude the district court did not misapply the law or improperly consider the best-interest factors in making its residential responsibility determination. We therefore affirm the award of primary residential responsibility of the younger two children to their father.

III.

[¶ 16] Marsha Brouillet argues the district court erred as a matter of law in applying the child support guidelines to decide her child support payment.

[¶ 17] We have articulated the standard of review for child support decisions:

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the Guidelines. . . .

. . . N.D. Admin. Code § 75–02–04.1–02(10) requires "a child support order include a statement of the obligor's net income and 'how that net income was determined.' "

*Conzemius v. Conzemius,* 2014 ND 5, ¶ 33, 841 N.W.2d 716 (quoting *Buchholz v. Buchholz,* 1999 ND 36, ¶¶ 11–12, 590 N.W.2d 215).

[¶ 18] Marsha Brouillet argues the district court improperly imputed her income in determining her child support obligation. She contends her most recent tax return shows an annual income of $13,019, and the court imputed income to her of $20,111, which constitutes a mistaken application of N.D. Admin. Code § 75–02–04.1–07(3).

█ [¶ 19] Generally, this Court has said that when a child support obligor is underemployed, the district court may impute income to the obligor under N.D. Admin. Code § 75–02–04.1–07(3), which requires using the greatest imputed income resulting from three different methods of measuring earning capacity. *Brandner v. Brandner,* 2005 ND 111, ¶ 16, 698 N.W.2d

259. "[W]hether an individual is underemployed for purposes of establishing a child support obligation is within the discretion of the trial court." *Id.* at ¶ 15.

[¶ 20] We have also outlined, however, how a district court should calculate an obligor's income:

The child support guidelines define "net income" as an obligor's gross annual income less federal and state tax obligations and other expenses. N.D. Admin. Code § 75–02–04.1–01(7) [*see* N.D. Admin. Code § 75–02–04.1–01(6) (eff. July 1, 2011)]. In calculating child support, a district court must consider "[n]et income received by an obligor from all sources . . . ." N.D. Admin. Code § 75–02–04.1–02(3) . . . . If an obligor's income has changed in the recent past, or is likely to change in the near future, "consideration may be given to the new or likely future circumstances." N.D. Admin. Code § 75–02–04.1–02(8). However, "unless the trial court makes a determination that evidence of an obligor's recent past circumstances is not a reliable indicator of his future circumstances, the trial court must not extrapolate an obligor's income under N.D. Admin. Code § 75–02–04.1–02(8)." [*Korynta v. Korynta*], 2006 ND 17, ¶ 17, 708 N.W.2d 895. Therefore, unless the district court makes a specific finding that the income reflected on the prior year's tax return is not a reliable indicator of future income, "[i]t is improper to calculate an obligor's annual employment income based on a mid-year pay stub . . . ." *Berge v. Berge*, 2006 ND 46, ¶ 19, 710 N.W.2d 417.

*Sonnenberg v. Sonnenberg*, 2010 ND 94, ¶ 15, 782 N.W.2d 654 (quoting *Heinle v. Heinle*, 2010 ND 5, ¶ 38, 777 N.W.2d 590).

[¶ 21] In this case, the district court did not find Marsha Brouillet was either unemployed or underemployed to justify imputing income to her under N.D. Admin. Code § 75–02–04.1–07(3). Rather, the district court made findings that the income reflected on her 2013 tax return did not reliably indicate her future income:

Consideration of Marsha's current pay and testimony lead to the conclusion that her 2013 tax return does not reflect her current earning ability. That conclusion is supported by the fact that her 2013 return does not even reach the level of the imputed federal minimum wage income allowed under the guidelines. Under these circumstances the undersigned determines that Marsha's gross income is $20,111 as calculated using her December 15, 2014 paystub and the lower end of her estimate of the hours per week she will be working; $11.05/hour multiplied by 35 hours per week multiplied by 52 weeks a year.

[¶ 22] The district court considered her 2013 income tax return, which reflected gross income of $13,019. The court stated, "Tax return information is generally the basis for computation of an individual's child support obligation liability, unless it is determined that the tax return information does not accurately reflect the obligor's income earning capacity." The court then made specific findings based on her testimony at trial showing that her 2013 tax return was not a reliable indicator of her future income:

In September of 2014 Marsha changed job locations, moving from one Burger King location in Grand Forks to another Burger King location. She received an increase in pay to $11.05 per hour. However, she testified that a new owner is now operating the Burger Kings and her ability to work overtime is limited. She testified that she believes she will work 35–40 hours per week.

[¶ 23] We conclude the evidence and findings based in part on her own testimony support the district court's calculation of her income. Under the facts and circumstances of this case, we therefore conclude the court properly calculated her income for purposes of determining her child support obligation under the guidelines.

## IV

[¶ 24] Marsha Brouillet argues the district court erred in determining the equitable distribution of the marital assets and liabilities.

[¶ 25] Under N.D.C.C. § 14–05–24(1), the district court is required to make an equitable distribution of all the divorcing parties' marital property and debts. "All property held by either party, whether held jointly or individually, is considered marital property, and the court must determine the total value of the marital property before making an equitable distribution." *Fugere v. Fugere*, 2015 ND 174, ¶ 8, 865 N.W.2d 407 (quoting *Hoverson v. Hoverson*, 2013 ND 48, ¶ 9, 828 N.W.2d 510). After the property is valued, the court must equitably divide the marital estate in consideration of the *Ruff–Fischer* guidelines:

> The respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Fugere,* at ¶ 8 (quoting *Feist v. Feist,* 2015 ND 98, ¶ 6, 862 N.W.2d 817). "Our law does not require a set formula or method for dividing marital property; rather, the division is based on the particular circumstances of each case." *Fugere,* at ¶ 8 (quoting *Hoverson,* at ¶ 10). Although the property division need not be equal to be equitable, the district court must explain a substantial disparity. *Fugere,* at ¶ 8. The court's distribution of marital property is a finding of fact, which we review under the clearly erroneous standard. *Id.* at ¶ 7.

[¶ 26] Marsha Brouillet argues the district court erred in determining the equitable distribution of the marital assets and debts by distributing a 2007 Toyota Highlander to her and making her assume the monthly payments for the vehicle, as well as by dividing the rest of the marital debts to be split between the two parties. She argues the only item that the parties had differed on was the 2007 Toyota Highlander, which had a book value of $16,000 and a loan debt of $18,194. She contends, however, that she was willing to take on certain debt only in exchange for Bradley Brouillet's continuing to make the monthly payments on the Toyota of $406 per month.

[¶ 27] Here the district court found that the parties would both have significant debts but that both parties should be self-sufficient. The court put significant weight on the fact the parties were generally in agreement on the allocation of assets and debts. While Bradley Brouillet did not believe either party could afford to make the Toyota payments, Marsha Brouillet testified she wanted to retain the vehicle and hold him responsible for the payments. The court ultimately allocated the vehicle with the debt to her, leaving it to her to decide whether she wanted to retain the vehicle and service the debt.

[¶ 28] The district court considered the *Ruff–Fischer* guidelines and allocated $18,650 of assets and $31,554 of debt

to Bradley Brouillet, and $22,750 of assets and $60,081 of debt to Marsha Brouillet. The court found that while the allocation of assets and debts was not equal, it was equitable. The court essentially adopted his recommended distribution, giving her the option whether to retain the vehicle. The court also explained its decision and its rationale for the difference in its debt allocation, explaining that she had failed to provide sufficient documentation regarding her Altru bills, that the court used her asserted value of $22,330, and that the difference between the parties' "net award" is essentially equal to her Altru debt. On the basis of our review, we conclude the district court's distribution of the parties' property and debts was not induced by an erroneous view of the law and is supported by evidence, and we are not left with a definite and firm conviction a mistake has been made.

[¶ 29] We conclude the district court's equitable distribution of the marital property and debts was not clearly erroneous.

## V

[¶ 30] Marsha Brouillet argues the district court abused its discretion in allowing a Facebook photograph into evidence without proper foundation.

[¶ 31] Generally, whether to admit photographs into evidence is within the district court's discretion. *See Hamilton v. Oppen*, 2002 ND 185, ¶ 22, 653 N.W.2d 678. Whether an adequate foundation has been laid also lies within the sound discretion of the district court. *See Sorenson v. Slater*, 2011 ND 216, ¶ 16, 806 N.W.2d 183; *Piatz v. Austin Mut. Ins. Co.*, 2002 ND 115, ¶ 17, 646 N.W.2d 681. For example, in *State v. Thompson*, 2010 ND 10, ¶ 24, 777 N.W.2d 617, this Court discussed the foundational requirements for admitting text messages and looked to other courts that held "similar electronic

messages were authenticated by circumstantial evidence establishing the evidence was what the proponent claimed it to be." We also said the "proper foundation for the picture of the text message required sufficient evidence that the picture was what it purported to be." *Id.* at ¶ 28; *see also* N.D.R.Ev. 901.

[¶ 32] Nonetheless, "[a] touchstone for an effective appeal of an issue requires the issue to be properly raised in the district court so that court can intelligently rule on the issue." *Thompson*, 2010 ND 10, ¶ 13, 777 N.W.2d 617 (citing *State v. Osier*, 1999 ND 28, ¶ 14, 590 N.W.2d 205). Rule 103(a)(1), N.D.R.Ev., provides "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and . . . if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike; and (B) states the specific ground, unless it was apparent from the context."

[¶ 33] Marsha Brouillet argues the district court abused its discretion in ruling on her objection to the lack of foundation for admission of the Facebook photograph that Bradley Brouillet offered into evidence. She contends the court erred when it stated that if the objection was made for lack of foundation, it would stop the proceeding and charge the party making the objection with the cost of seeking a source to establish foundation for the Facebook photograph. The trial transcript, however, shows the exhibit was received after her attorney withdrew the objection:

MR. LAMB: Can I ask some foundation questions, Your Honor?

THE COURT: I am granting your foundation objection. I don't know what you don't understand. I am granting your foundation objection. I am just telling

you that I am going to leave the record open—

MR. LAMB: Who is going to pray tell be the records custodian, Your Honor?

THE COURT: It's going to be an incredible cost to do that, Mr. Lamb. That's my point.

MR. LAMB: Who is going to be it?

THE COURT: It's going to be the Facebook company.

MR. LAMB: Exactly.

THE COURT: That's correct.

MR. LAMB: It's kind of bizarre to even suggest that, Your Honor, quite frankly.

THE COURT: No, it's not. Because I am going to get an—what I am going—what these folks are going to do is they are going to go to the expense to get Facebook people to do that and I am going to assess those costs against your client.

MR. LAMB: Your Honor—

THE COURT: If you believe that this is not—

MR. LAMB: Quite respectfully, I would disagree with that analysis. *But I'll withdraw the objection.*

THE COURT: You can object if you believe that this is not an accurate document.

MR. LAMB: *Your Honor, I am going to withdraw the objection.* But your analysis, I object to.

THE COURT: What analysis?

MR. LAMB: That they are going to go to Facebook to get a records keeper to verify this.

THE COURT: That is what you are requiring them to do, Mr. Lamb.

MR. LAMB: Your Honor, I don't believe they would do that, quite frankly.

THE COURT: So your objection is not that you really believe that there isn't

foundation, your objection is you don't think they can do it.

MR. LAMB: I really don't think they would go to that extreme, Your Honor.

THE COURT: That's precisely—

MR. LAMB: And I don't think—and I—quite frankly—

THE COURT: Mr. Lamb, that is precisely why I am assessing the costs against your client is because you are not objecting on a legal basis, you are objecting because you believe that's going to be cost-prohibitive for them to do that. What I am saying, Mr. Lamb, is if there is going to be a cost your client is going to bear that cost.

MR. LAMB: I don't think it's cost-prohibitive, Your Honor. I think it's just prohibitive from the Facebook perspective.

THE COURT: Then make the objection, Mr. Lamb.

MR. LAMB: *I withdrew it, Your Honor, with all due respect.*

THE COURT: *Then we will receive the exhibit.*

(Emphasis added.)

[¶ 34] Even if the district court abused its discretion in ruling on the necessary foundation for the exhibit, *see Thompson,* 2010 ND 10, ¶ 28, 777 N.W.2d 617, Marsha Brouillet's attorney withdrew her objection to the exhibit. We therefore conclude she did not preserve this issue for appeal.

## VI

[¶ 35] We have considered Marsha Brouillet's remaining arguments and conclude they are either unnecessary to our decision or without merit. The judgment is affirmed.

[¶ 36]   GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, LISA FAIR McEVERS and CAROL RONNING KAPSNER, JJ., concur.