2006 ND 151

**Ruth Jewel WILSON, Plaintiff and Appellee**

v.

**Esteban IBARRA, Defendant and Appellant.**

**No. 20050357.**

Supreme Court of North Dakota.

July 18, 2006.

Tracey Rae Lindberg (on brief), Tracey R. Lindberg Law Firm, Breckenridge, MN, for plaintiff and appellee.

Mark Andrew Meyer (on brief), Meyer Law Firm, Wahpeton N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Esteban Ibarra appeals from an amended judgment and decree denying him visitation with his minor daughter. We conclude the district court's findings are insufficiently detailed to support a total ban on all visitation, and therefore, we reverse and remand.

I

[¶ 2] Ibarra and Ruth Jewel Wilson were married at Wahpeton on May 13, 2000, about eight months after their daughter was born. During the marriage and earlier in their relationship, Ibarra was an alcoholic who physically abused Wilson, resulting in several criminal charges. After the child was born, Ibarra would go out drinking with friends rather than care for the child. Wilson, the daughter, and Ibarra's minor son from a previous relationship moved out of the parties' home in December 2000.

[¶ 3] According to Wilson, Ibarra's contact with the children was sporadic after the parties separated. He often failed to pick up the children after requesting to spend time with them. In February 2002, Ibarra's son went to live with Ibarra for a period of time, but Ibarra's parental rights to his son were eventually terminated. In October 2002, Wilson commenced a divorce action against Ibarra. Before the divorce was granted, Ibarra moved to California in December 2002 without leaving Wilson a forwarding address, because he "was hav-

ing trouble with the law" in North Dakota and he had family members living in California. A default divorce judgment and decree was entered in February 2003 which granted Wilson custody of the couple's daughter, ordered Ibarra to pay child support, and granted Ibarra "reasonable visitation."

[¶ 4] In October 2004, Ibarra returned to North Dakota and began living in Hankinson with his new wife. According to Ibarra, he returned to North Dakota "to clear up my problems with the law and to try to re-unite with my children." During the time Ibarra was in California, he failed to pay child support for his daughter, and sent her no cards, letters, or birthday presents. According to Wilson, Ibarra made only two attempts to contact the child during his 22 months in California, and Wilson refused to allow him to talk to the child because he called at 3 a.m. when he was intoxicated. The parties agree Ibarra's last contact with the child occurred in 2002.

[¶ 5] In November 2004, Ibarra began paying his court-ordered child support obligation. Ibarra claimed Wilson refused to allow any visitation after he returned to North Dakota. According to Ibarra, he received anger management and alcohol evaluations after he returned, was undergoing anger management group therapy, and his alcoholism was in remission, although he admitted drinking two beers at a graduation party. Ibarra claimed a probation officer comes to his home twice a month and he and his wife are randomly checked for alcohol and drug use, and there have been no positive tests since his return to the state. In February 2005, Ibarra had a chance meeting with Wilson and the child at a grocery store and, according to Ibarra, the child was happy to see him and they conversed for 15 or 20 minutes. Wilson and the child live with her boyfriend and his young son, and they have a happy and stable home life. Wilson fears Ibarra would form a relationship with the child but would ultimately stop seeing her. Wilson's boyfriend indicated he did not want their current family unit disrupted by Ibarra.

[¶ 6] In April 2005, Ibarra moved to amend the divorce judgment and decree to set a visitation schedule with the child. Wilson responded with a motion to deny Ibarra's request and to amend the divorce judgment to eliminate visitation between Ibarra and the child. In the alternative, Wilson sought to have Ibarra granted only supervised visitation.

[¶ 7] Following a hearing, the district court denied Ibarra's request for a visitation schedule and granted Wilson's motion to deny Ibarra any visitation with the child. The court determined Ibarra had abandoned the child under N.D.C.C. §§ 14–07–17 and 27–20–02, and that awarding Ibarra any form of visitation with the child would be "likely to endanger her physical or emotional health and well being." The court's decision is based on the following findings:

1. The Court finds that [Ibarra], in accordance with the evidence submitted, has a history of violence, and alcohol abuse. The alcohol abuse is unresolved.

2. The Court finds that [Ibarra] did engage in four incidents of violence over a five-year period from 1997 to 2002 in which he was charged criminally. The Court further finds that the implication with such behavior is that there were many more incidents of violence that were not reported to law enforcement. [Ibarra] admits to several episodes of violence perpetrated upon [Wilson], as set forth in the parties' affidavits.

3. The Court finds that [Ibarra] abandoned [the child] by his lack of care and support for her from at least April 2002 until his recent return to North Dakota, and through the bringing of this motion.

4. The Court finds that during this above period, [Ibarra] had no contact with [the child], did not perform any actions to ensure for her care, did not send birthday cards or Christmas cards, or otherwise reasonably attempt to apprize [sic] himself of her condition or well being.

5. Until his recent return to North Dakota, [Ibarra] did not make any attempt or effort to provide financial support for [the child].

6. [Ibarra] by his motion wants to "unabandon" [the child], but did not introduce any substantial evidence of justifiable cause for his actions.

7. The Court finds that to reintroduce [Ibarra] into [the child's] life at this time would be a detriment to her emotionally. It is unfair to this child to have [Ibarra] come back into her life with the very real possibility that he will leave again.

8. The Court further finds that any ordered visitation, including supervised visitation, would be likely to endanger [the child's] physical or emotional health, and is not in her best interests.

## II

[¶ 8] Ibarra argues the district court erred in denying him any visitation with his child.

[¶ 9] After a custody decision has been made, visitation is governed by N.D.C.C. § 14–05–22(2), which provides:

After making an award of custody, the court shall, upon request of the noncustodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health.

A district court's decision on visitation is a finding of fact and will not be reversed unless it is clearly erroneous. *Paulson v. Paulson*, 2005 ND 72, ¶ 19, 694 N.W.2d 681. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Simburger v. Simburger*, 2005 ND 139, ¶ 12, 701 N.W.2d 880. The parties do not dispute that there has been a significant change of circumstances since the prior visitation order and that it is in the best interests of the child to modify the order. *See id.* at ¶ 13. Rather, Ibarra contends the court should have allowed him some form of visitation with the child.

[¶ 10] Our statutes and case law "clearly recognize that visitation with a noncustodial parent may be curtailed or eliminated entirely if it is likely to endanger the child's physical or emotional health." *Litoff v. Pinter*, 2003 ND 172, ¶ 12, 670 N.W.2d 860. Nevertheless, the primary purpose of visitation is to promote the best interests of children, and a restriction on visitation must be based on a preponderance of the evidence and accompanied by a detailed demonstration of the physical or emotional harm likely to result from visitation. *Simburger*, 2005 ND 139, ¶ 15, 701 N.W.2d 880; *Wigginton v. Wigginton*, 2005 ND 31, ¶ 9, 692 N.W.2d 108. Our precedents demonstrate that a complete denial of visitation to a noncustodial parent is a drastic measure that should be

exercised only under the most compelling of circumstances.

[¶ 11] For example, in *Johnson v. Schlotman*, 502 N.W.2d 831, 835 (N.D. 1993), the amended judgment temporarily discontinued all contact between the lesbian mother and her two children, leaving future contact in the discretion of a psychologist. This Court said:

> Here we are concerned that the trial court overstepped its bounds by terminating all visitation. To justify such an onerous restriction on visitation, physical or emotional harm resulting from the visitation must be demonstrated in detail, and we will not simply assume or surmise such harm. *Hanson v. Hanson,* 404 N.W.2d 460 (N.D.1987). An order denying visitation must be based on the preponderance of the evidence. *Healy v. Healy,* 397 N.W.2d 71 (N.D.1986). Absent a detailed demonstration of harm, such a restriction appears punitive. Although the children are upset and confused about Dianne's homosexuality, it is questionable whether this state of mind rises to the level of endangerment to the children's physical or emotional health.

*Id.* Because the district court had issued further orders providing for regularly-scheduled visitation, this Court did not consider the issue further. *Id.*

[¶ 12] In *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 8, 603 N.W.2d 896, the district court changed custody of four children from the mother to the father and ordered no visitation for one year for the mother who had frustrated visitation between the father and the children and had attempted to alienate the children from their father. This Court reversed the no-visitation order:

> Though we conclude the change of custody was proper and we sympathize with the trial court's frustration, we do

not believe Diane should be deprived of all visitation for one year. We have stated visitation between a non-custodial parent and a child is presumed to be in the child's best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child. *Blotske [v. Leidholm],* 487 N.W.2d [607, 610, (N.D.1992) ]. Thus, a court should only withhold visitation when it is "likely to endanger the child's physical or emotional health." *Id. . . .* Denying a non-custodial parent visitation with a child is "an onerous restriction," such that "physical or emotional harm resulting from the visitation must be demonstrated in detail" before it is imposed. *Johnson v. Schlotman,* 502 N.W.2d 831, 835 (N.D.1993). We believe continuing, supervised contact with Diane should be attempted before she is denied all visitation.

*Id.* at ¶ 21.

[¶ 13] In *Litoff,* 2003 ND 172, ¶ 6, 670 N.W.2d 860, a father filed a motion to establish a visitation schedule for his 13-year-old daughter after a Texas court had suspended all visitation because of his sexually inappropriate conduct in the presence of, and sexually inappropriate comments made to, the daughter. We upheld the district court's suspension of the father's visitation rights, based in part on the child's psychologist's detailed testimony about the emotional harm suffered by the child resulting from the father's conduct and the psychologist's recommendation that there be no further visitation until the child agreed to it. *Id.* at ¶ 13. In rejecting the father's argument that the court improperly placed the question of visitation in the hands of the child, we said:

> The trial court held that visitation would be "considered as a viable alternative" only after Litoff completed all of the services required by Social Services to

the satisfaction of the court. The court further indicated it would then consider only supervised visitation, "and only to the extent that [the child] wants to have contact with her father." The language of the court's order clearly contemplates a further hearing before a resumption of visitation will be considered.

*Id.* at ¶ 14.

■ [¶ 14] The district court's findings in this case do not demonstrate in detail the physical or emotional harm to the child resulting from any form of visitation. The court provided no nexus or link demonstrating how Ibarra's past problems would result in physical or emotional harm to the child at this time, even under the setting of supervised visitation. There are no evaluations from independent professionals detailing the harm, and the court's finding of physical or emotional harm resulting from visitation appears to be based on surmise or conjecture, which was condemned by this Court in *Schlotman*, 502 N.W.2d at 835. The court's decision appears to be punitive in nature because the court found Ibarra had essentially "abandoned" the child when he went to California and because the court provided for no possibility of future visitation regardless of a change in circumstances. However, this was not a proceeding to terminate parental rights under N.D.C.C. ch. 27–20. Rather, the governing standard in this visitation dispute is whether allowing visitation would physically or emotionally harm the child. The court's findings are insufficient to support a total termination of Ibarra's visitation.

[¶ 15] We remand to the district court for the preparation of more detailed findings to establish that any form of visitation would result in physical or emotional harm to the child, or in the alternative, the court should order an attempt at supervised visitation before all visitation is terminated.

*See Hendrickson,* 2000 ND 1, ¶ 21, 603 N.W.2d 896.

## III

[¶ 16] The amended judgment and decree is reversed and the case is remanded for further proceedings.

[¶ 17] DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.

CROTHERS, Justice, dissenting.

[¶ 18] I respectfully dissent. I believe the district court has made sufficient findings and conclusions to affirm this case under our standard of review and the applicable burden of proof. Instead, the majority requires "preparation of more detailed findings to establish that any form of visitation would result in physical or emotional harm to the child, or in the alternative, the court should order an attempt at supervised visitation before all visitation is terminated." Majority at ¶ 15 (citation omitted). From this result, it appears this Court has improperly substituted its judgment for that of the district court by, in essence, directing supervised visitation and, in the process, has implicitly elevated the standard of proof for not allowing visitation.

[¶ 19] The majority acknowledges our standard of review that a "district court's decision on visitation is a finding of fact and will not be reversed unless it is clearly erroneous. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review of the entire record, we are left with a definite and firm conviction a mistake has been made." Majority at ¶ 9 (internal citations omitted). Yet, I cannot see where the majority actually implements this standard. The majority never specifies wheth-

er its result obtains because the district court misapprehended the law, the district court's conclusions were not supported by evidence, or whether this Court has been left with a definite and firm conviction the district court made a mistake. I am concerned that such analysis is missing because it cannot be accomplished on this record.

[¶ 20] The district court made findings, as reported by the majority. Majority at ¶ 7. The district court also issued a letter opinion stating:

> I have had the opportunity to consider the evidence and case law in the above matter. I will deny Mr. Ibarra's motion for visitation. I will make the specific finding that any ordered visitation, including supervised visitation, would be likely to endanger [the child's] physical or emotional health. *Paulson v. Paulson*, 694 N.W.2d 681, 690 (N.D.2005); N.D.C.C. § 14–05–22(2). I would ask that Ms. Lindberg draw the appropriate Findings and Order and submit them to Mr. Meyer for review prior to submitting them to me.

> I came to the above conclusion based on Mr. Ibarra's history of abandonment of [the child], his history of violence, and his history of alcohol abuse which appears unresolved. I recognize that Mr. Ibarra has taken steps to improve his life and that he has not had a criminal charge filed against him in about three years. The fact remains, however, is that he did engage in four incidents of violence over a five-year period from 1997 to 2002 in which he was charged criminally. The implication with such behavior is that there were many more incidents of violence that were not reported to law enforcement. This is confirmed by the many episodes of violence complained of by Ms. Wilson. Mr. Ibar-

ra denied several of those incidents but there were several he admitted to.

> Mr. Ibarra also has abandoned this child as that term is understood under North Dakota Law. "Desertion or a failure to support a child or pregnant wife for a period of three months is presumptive evidence of intention to wholly abandon." N.D.C.C. § 14–07–17. Section 27–20–02 of the N.D.C.C. defines "abandon" as follows:

>> As to a parent of a child not in the custody of that parent, failure by the noncustodial parent significantly without justifiable cause:

>> (1) To communicate with the child; or

>> (2) To provide for the care and support of the child as required by law.

> Mr. Ibarra abandoned [the child] by his lack of care and support for her from at least April 2002 until his recent return to North Dakota. He now wants to "unabandon" her.

> I am of the opinion that to reintroduce Mr. Ibarra into [the child's] life at this time would be a detriment to her emotionally. I will grant that Mr. Ibarra appears to have been making some positive strides in his life, but it is unfair to this child to have Mr. Ibarra come back into her life with the very real possibility that he will leave again. Mr. Ibarra made his choices regarding [the child] some years ago and now he has to live with them.

[¶ 21] Our case law provides that, while we are not ferrets, *Anderson v. A.P.I. Co. of Minnesota*, 1997 ND 6, ¶ 25, 559 N.W.2d 204, this Court can and does look at the findings of fact and related memorandum opinions to understand the district court's decision. *See In re Griffey*, 2002 ND 160, ¶ 8, 652 N.W.2d 351. Our stated rule is "[f]indings of fact are adequate if they provide this Court with an understanding of the district court's factual basis

used in reaching its determination. Lack of specificity alone does not make findings of fact erroneous." *State v. Bergstrom*, 2006 ND 45, ¶ 15, 710 N.W.2d 407 (citations omitted).

[¶ 22] Here, the district court explicitly concluded that either supervised or unsupervised visitation would likely endanger the child's physical or emotional health. That is precisely what is required under our statute. N.D.C.C. § 14–05–22(2). The district court's conclusion is supported by findings of the father's history of violence and criminal charges, history of unresolved alcohol abuse, abandonment and non-support of the child, and lack of any meaningful effort to communicate with the child for nearly two years. No one disputes that these findings are supported by the evidence.

[¶ 23] Rather than accepting the district court's conclusion and supportive findings, the majority moves the goalposts out of range by ignoring the applicable preponderance of evidence burden of proof, *Healy v. Healy*, 397 N.W.2d 71, 73 (N.D.1986), and by additionally suggesting (without actually holding or citing to authority) that there was need for "evaluations from independent professionals." Majority at ¶ 14. In the end, the majority's opinion appears aimed at achieving supervised visitation without holding the findings are clearly erroneous, without acknowledging that this Court is substituting its judgment for that of the district court, and without abiding by the applicable burden of proof. I do not agree with this approach or result, and therefore, I respectfully dissent.

[¶ 24] Carol Ronning Kapsner, J., concurs.