2014 ND 107 .

**Terrance T. SCHLIEVE, Plaintiff and Appellant**

v.

**Julie A. SCHLIEVE, Defendant and Appellee.**

**No. 20130368.**

Supreme Court of North Dakota.

May 28, 2014.

Steven T. Ottmar, Jamestown, N.D., for plaintiff and appellant.

Michael P. Hurly, Devils Lake, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Terrance Schlieve, the father of three children, appeals from a divorce judgment awarding primary residential responsibility of the children to Julie Schlieve, the mother. We affirm in part and reverse in part, concluding the district court did not clearly err in awarding primary residential responsibility of the children to the mother, but remand for the district court to add missing statutorily mandated parenting-plan provisions and to

modify the parenting plan's religious clause.

## I

[¶ 2] Terrance and Julie Schlieve were married in 1992. The parties have three children, born in 1996, 1999, and 2004. The father sells soil enhancements and fertilizer for a company and is the area manager, and the mother is a personal banker and mortgage lender. In September 2012, the father sued for divorce. The mother responded that she did not want a divorce, but if the court granted a divorce, she sought primary responsibility of the couple's three children. The court entered an interim order, giving the parties joint residential responsibility of the children, alternating on a weekly basis.

[¶ 3] After a trial on the issues of custody, child support, property valuation and distribution, and spousal support, the district court found the parents are not able to peacefully resolve conflicts with the children present. The court also found both parents are good parents but the testimony indicated the mother was more involved in the daily lives of the children until the father sued for divorce. The court found the mother provided the leadership in education and religion and was involved in the children's medical care, including the provision of a special diet needed for herself and her son, who shares the same disease. The court found the father has been supportive and involved in the children's activities and he has been a good father.

[¶ 4] A divorce judgment was entered awarding the mother primary residential responsibility of the children.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 6] The district court's award of primary residential responsibility and the terms of the parenting plan are the only provisions of the divorce judgment at issue in this appeal. The father argues the district court's findings regarding the best interests of the children and ultimate award of residential responsibility to the mother are clearly erroneous.

[¶ 7] Section 14–09–06.2, N.D.C.C., describes factors for evaluation of the best interests and welfare of the child in awarding primary residential responsibility. The best interest factors include:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence....

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests....

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

N.D.C.C. § 14–09–6.2(1).

[¶ 8] A court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous or it is not sufficiently specific to show the factual basis for the decision. *See, e.g., Rustad v. Rustad,* 2013 ND 185, ¶ 5, 838 N.W.2d 421; *Wolt v. Wolt,* 2010 ND 26, ¶ 7, 778 N.W.2d 786. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mis-

take has been made." *Doll v. Doll,* 2011 ND 24, ¶ 6, 794 N.W.2d 425. "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Wolt,* at ¶ 7 (quotation marks omitted). The district court has substantial discretion in making a custody determination, but it must consider all of the best-interest factors. *Id.* at ¶ 9. "Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision." *Id.*

A

[¶ 9] The father argues the court's finding the best-interest factors are "for the most part, equal for both parents" is clearly erroneous. In support of this argument, he claims the court erred in not making any specific findings under N.D.C.C. § 14–09–06.2(1)(e), which considers "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the ·child." The father argues this factor weighs in his favor because, among other reasons, on multiple occasions during the mother's parenting time, the children were not in her care and she failed to contact him so he could watch the children. He also argues that his strong bond with the youngest child tips factor (a), which considers emotional ties between the child and parents, in his favor. The father claims the court erred by allegedly failing to consider the bond between himself and the youngest child.

[¶ 10] In its conclusions of law, the district court stated:

The factors of Section 14–09–06.2 are, for the most part, equal for both parents. Each parent can provide love, care, and guidance. There is extended family in the community. The stability of the children is not an issue.... [The father] still wants this split custody to continue, as it provides him with quality time with his children, but Julie and the two oldest children do not. So there are reasons not to continue it.

... [T]he parents have not been able to find an amicable relationship as the hurt suffered by the [mother] remains strong as the marriage ends. Finally, the primary factor determinative of primary residential care is the preference of the children. The two oldest children do not prefer the interim plan.

A liberal parenting plan can maintain the close father-son relationship and the daughters are of an age where they can have liberal contact with their father.

[¶ 11] The court's findings are supported by the evidence. Tamra Elshaug, the father's sister, testified both parents are active in the children's lives, she has never seen any issues with the parenting of the children, and they are both good parents. The father testified both he and the mother plan on staying in Devils Lake, so the children's relationships with family members should not be affected. The middle child testified both parents take care of her, provide for her, and make sure she has what she needs. This and other evidence supports the court's finding that "[t]he factors ... are, for the most part, equal for both parents. Each parent can provide love, care, and guidance.... The stability of the children is not an issue."

[¶ 12] "Findings are adequate if we can understand from them the factual basis for the court's determination." *Minar v. Minar*, 2001 ND 74, ¶ 10, 625 N.W.2d 518. "A trial court is not required to make specific findings of fact for each of the above statutory factors, but the trial court should consider all relevant factors in making its custody decision." *DesLauriers v. DesLauriers*, 2002 ND 66, ¶ 6, 642 N.W.2d 892. The court's statement that the factors "are, for the most part, equal" does not equate to a finding that every factor is equal. Although the district court did not make an explicit finding for every best-interest factor, a finding for every factor was not required and does not necessarily mean the court did not consider every factor. Moreover, contrary to the father's assertion, the court did consider the father's close relationship with the youngest child, evidenced by the court's stating, "A liberal parenting plan can maintain the close father-son relationship[.]"

[¶ 13] We conclude the district court's finding that the best interest factors are "for the most part, equal for both parents" is supported by the evidence and is not clearly erroneous. We also conclude the court's findings are sufficient to understand the basis for its decision.

B

[¶ 14] The father argues there was insufficient evidence establishing the two oldest children were of sufficient maturity to make a decision as to where they wanted to live and the court erroneously used the preference of the two older children as the dispositive issue.

[¶ 15] "If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child." N.D.C.C. § 14–09–06.2(i). "Although age is not the exclusive indicator of a child's maturity and capacity to make an intelligent choice, generally, a child's pref-

erence is entitled to more weight as he or she grows older." *Barstad v. Barstad,* 499 N.W.2d 584, 588 (N.D.1993).

[¶ 16] The district court found with regard to the two oldest children's testimony:

> At trial, the 14–year–old daughter testified that she and her older sister wanted to live with mom because they had a closer relationship with their mother. She further testified that her younger brother should come along with them to live with mom as he gets confused by the split parenting. Her testimony was that both parents "can do it" (parenting) but she prefers her mother.
>
> A trial deposition was offered for the 17–year–old daughter who was unable to appear at the trial. She is a good student and now a senior in high school. She testified that her preference is to live with her mother because she can talk to her and gets along better with her mother. Her father is busy with work. She testified that she did not want the one week on and one week off plan to continue. While she would like to stay in the marital home, she understands that she will be moving if her mother receives primary residential responsibility. She plans to spend time with her father in the next year before she heads to college.
>
> . . . .
>
> This Court finds by clear and convincing evidence that the two oldest children are of sufficient maturity to make a sound judgment about their preference, which is to live with the mother. Their decision is based on "doing girl things" and better communication with their mother, which is a desirable and proper reason. Their concern for the younger brother to stay with them as one unit is again based upon desirable, reasonable, and sound judgment.

[¶ 17] In a similar case, this Court has affirmed reliance on the age and maturity for 13–year–olds. "Here, Brandon and Brittany are thirteen years of age. In consideration of their age and their strong preferences, we do not believe the district court erred by retaining custody of Brandon in Kevin, and granting Sharon physical custody of Brittany." *Loll v. Loll,* 1997 ND 51, ¶ 15, 561 N.W.2d 625.

[¶ 18] In this case, the district court considered the preferences of the two oldest children, who were about 14 and 17 at the time of the court's decision. The court stated, "Finally, the primary factor determinative of primary residential care is the preference of the children." Although we have held that a child's preference is not necessarily determinative, it is still a significant factor, and we cannot say the court clearly erred under the facts of this otherwise very close case. *See Frueh v. Frueh,* 2009 ND 155, ¶ 14, 771 N.W.2d 593 ("A mature child's preference may be particularly significant in deciding what is in the child's best interests, but it is not necessarily determinative.").

## C

[¶ 19] The father argues the court erred in awarding the mother primary residential responsibility, claiming it is not in the best interests of the children to disrupt the stability which had been established during the week-on, week-off schedule implemented by the interim order. He claims, "The only evidence presented that it wasn't going well, was a generalized statement by [the mother] that '[counsel for Terry hasn't] been in [her] house or listened to the children.'"

[¶ 20] Contrary to the father's assertion, there is other evidence to support the court's decision to end the interim plan. The middle child testified:

Q. So what's the best part about this parent coming in every other week?

A. I can't think of a good—

Q. Well, what's some not so good things?

A. Well, there's just some things that—like, girl stuff I'd talk to my mom about. And when it's my dad's week and I have to wait that week.

[¶ 21] Additionally, the oldest child testified at a deposition that she does not like the one week on and one week off schedule. The mother also testified there should not be a week-to-week parenting schedule, but was nevertheless willing to do the every-other-week schedule during the summer because there is not as much structure and the children do not have to be at as many places as during the school year.

[¶ 22] Although stability is one of the best-interest factors, it is only one of the factors. *See Barstad*, 499 N.W.2d at 588 ("Thus, the preference is only one factor to consider in a custody decision...."). Moreover, there is little to support the father's assertion that the children enjoyed stability during the week-on, week-off schedule. He cites to the court's finding that the "stability of the children is not an issue." Nevertheless, the court explained its reasons for discontinuing the week-on, week-off schedule:

> Each parent can provide love, care, and guidance. There is extended family in the community. The stability of the children is not an issue. The earlier decision to have the children stay in the marital home was encouraged to provide stability for the children despite the inconvenience to the parents. The Court hoped the parties and the children could become comfortable with the split plan and continue it. [The father] still wants this split custody to continue, as it pro-

vides him with quality time with his children, but [the mother] and the two oldest children do not. So there are reasons not to continue it.

[¶ 23] "Under the clearly erroneous standard, we do not reweigh the evidence nor reassess the credibility of witnesses, and we will not retry a custody case or substitute our judgment for a district court's initial custody decision merely because we might have reached a different result." *Wolt*, 2010 ND 26, ¶ 7, 778 N.W.2d 786 (quotation marks omitted). On the basis of the evidence and the court's findings, we are not left with a definite and firm conviction the court made a mistake in awarding the mother primary residential responsibility.

### D

[¶ 24] The father argues the court erred because it should have considered the best-interest factors as they relate to each individual child, rather than as a collective group. He argues the court relied on the preference of the two older children, but not the youngest child's. He claims the only evidence presented to support the youngest child's preference to live with his mother was hearsay testimony by the middle child.

[¶ 25] A court is generally not required to do a line-by-line best-interest analysis for each individual child. When the factors are in fact different for each child, then such an analysis is permissible and under some circumstances may be necessary; nevertheless, courts should be cautious about dividing custody of children. *See Gravning v. Gravning*, 389 N.W.2d 621, 622–23 (N.D.1986) ("courts are cautious about dividing custody of children"); *Stoppler v. Stoppler*, 2001 ND 148, ¶ 7, 633 N.W.2d 142 ("split custody of siblings is generally disfavored").

[¶ 26] The evidence in this case supports the court's decision to keep the children together. For example, the middle child testified she and her younger brother should be in the same home, and the district court found "[t]heir concern for the younger brother to stay with them as one unit is again based upon desirable, reasonable, and sound judgment." We conclude the district court did not misapply the law or improperly consider the best-interest factors in making its residential responsibility determination. We therefore affirm the award of primary residential responsibility to the mother.

### III

[¶ 27] The father argues that if this Court affirms the award of primary residential responsibility to the mother, the award of parenting time to him is clearly erroneous.

[¶ 28] The standard of review for a district court's parenting-time decisions is well-established:

> After a custody decision has been made, visitation is governed by N.D.C.C. § 14–05–22(2), which provides:
>
> > After making an award of custody, the court shall, upon request of the non-custodial parent, grant such rights of visitation as will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health.
>
> A district court's decision on visitation is a finding of fact and will not be reversed unless it is clearly erroneous. *Paulson v. Paulson*, 2005 ND 72, ¶ 19, 694 N.W.2d 681. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after review

of the entire record, we are left with a definite and firm conviction a mistake has been made.

*Wilson v. Ibarra*, 2006 ND 151, ¶ 9, 718 N.W.2d 568.

[¶ 29] The court in this case found:

> The [father] has a strong bond with his son since they enjoy many hours of hunting, fishing, and sports activities together. . . .
>
> Since both parents live in the same community, the strong bond between the parents and their children can be maintained.
>
> . . . .
>
> A liberal parenting plan can maintain the close father-son relationship and the daughters are of an age where they can have liberal contact with their father.

[¶ 30] The court awarded the father parenting time with his children every other weekend, Tuesday nights, every other week during the summer, and evenly split holidays. The oldest child is not subject to the schedule. The father claims the court erred by allegedly providing no analysis for its proposed parenting-time schedule and by implementing a limited rather than liberal parenting plan.

[¶ 31] Terrance Schlieve has failed to show the visitation schedule in this case does not provide him sufficient time to maintain a close relationship with his children. *See* N.D.C.C. § 14–05–22(2) ("After making an award of primary residential responsibility, the court, upon request of the other parent, shall grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child[.]"). Other than weekdays during which the children are in school, the father and mother have nearly evenly split time with the children. Having already made sufficient findings to award the mother primary residential re-

742

sponsibility, the district court was not required to make separate findings to justify its liberal parenting-time award to the father.

[¶ 32] We are not left with a definite and firm conviction the district court made a mistake with regard to the parenting-time schedule. Visitation decisions are findings of fact, and the record in this case enables us to understand the factual determination made by the court. *See Reinecke v. Griffeth*, 533 N.W.2d 695, 699 (N.D.1995) ("The evidence before the trial court suggested the visitation on two evenings each week during the school year interfered with the children's ability to perform in school and disrupted their normal routine."). We cannot say the district court's parenting-time decision is clearly erroneous.

## IV

[¶ 33] The father argues it was clearly erroneous for the court to include the provision regarding religion in the parenting plan.

[¶ 34] In the judgment, the district court included the following decision-making provision:

Religion: The children have been raised Catholic and will continue to be raised as such. Each parent should encourage and whenever possible, ensure that the children attend mass on Sundays and on all holy days of obligation as well as religious education classes.

[¶ 35] The father testified he does not necessarily agree with the Catholic faith but he will make sure his children continue to grow on a spiritual level. He testified the oldest child should have some input on her religion. He testified the middle child is too young and should continue to go to church, but when she gets older, he thinks she can make her own determination. He

similarly testified that the youngest child needs to continue to go to church and that even though he is not Catholic, he is not going to take the children away from that part of their lives and will make sure it is available for them.

[¶ 36] The father cites to *Hanson v. Hanson*, 404 N.W.2d 460, 463 (N.D.1987), in support of his proposition that the religious provision in this case is improper. In *Hanson*, this Court reversed a district court decision, stating:

Few areas of dispute in child custody and visitation cases are more fraught with difficulty than those involving differences in the religious beliefs of the divorced parents. Although we have not spoken directly on the issue, most courts that have considered the question have refused to restrain a noncustodial parent during visitation periods from exposing the minor child to his or her religious beliefs and practices, absent a clear, affirmative showing that these religious activities will be harmful to the child....

. . . .

... We conclude that the trial court's order prohibiting James from taking the children during visitation periods to any church other than the Catholic Church is clearly erroneous[.]

*Hanson*, 404 N.W.2d at 463, 465 (footnote omitted).

[¶ 37] Unlike *Hanson*, the religious provision in this case does not prohibit the father from taking the children to a religious service of his own choosing. Instead, the provision states that he "should encourage and whenever possible, ensure that the children attend" the Catholic services.

[¶ 38] Although this Court has not addressed religious provisions in parenting-time orders in this specific context, other

courts have held "the non-custodian is not required to give up visitation time to accommodate the custodian's chosen church services." *Wireman v. Perkins,* 229 S.W.3d 919, 922 (Ky.Ct.App.2007).

[¶ 39] In Mississippi, a court held that although it is in the best interests of the children to receive regular spiritual training each week, it was not appropriate for a court to mandatorily require that the children be taken to church each Sunday:

> In *Hodge v. Hodge,* 186 So.2d 748, 750 (Miss.1966), this Court addressed a provision almost identical to the one in the present case. There the chancellor awarded custody to the father with the provision that the mother take the children to church each Sunday. On suggestion of error, this Court restated its position:
>
>> We feel that it is certainly to the best interests of these three children to receive regular and systematic spiritual training each week, but we do not approve the decree of the Chancellor in mandatorily requiring that all three of said children be carried to church at eleven o'clock on each Sunday. We treated this portion of the Decree as a suggestion only. We reiterate that both the mother and father should be vitally interested in seeing that their children get regular and systematic spiritual training. Whether it is by attending Sunday School each Sunday or Church or both is for the parents alone to decide.
>
> *Hodge v. Hodge,* 188 So.2d 240 (Miss. 1966).

*McLemore v. McLemore,* 762 So.2d 316, 320 (Miss.2000). Although it affirmed the judgment, the court in Mississippi modified the provision to ensure the provision was not mandatory:

> To follow the precedent established in *Hodge,* we modify the provision regarding the McLemore twins' church attendance set forth in the Final Judgment of Divorce in the present case, to read as follows: Both the mother and father should be vitally interested in seeing that their children get regular and systematic spiritual training. Whether it be by attending Sunday School each Sunday or Church or both is for the parents alone to decide.

*McLemore,* 762 So.2d at 320.

[¶ 40] The National Interdisciplinary Colloquium on Child Custody has offered similar guidance: "[I]t is better to allow the custodial parent and the visiting parent to deal with the child as each parent wishes during that parent's time with the child." Robert J. Levy, *Legal and Mental Health Perspectives on Child Custody Law: A Deskbook for Judges* 148 (1998).

[¶ 41] In this case, the mother proposed the following clause to be included in the parenting plan:

> Religion: The children have been raised Catholic and will continue to be raised as such. The on-duty parent will ensure the children attend mass on Sundays and on all holy days of obligation. The on duty parent will ensure the children attend religious education classes, unless a child is 18 years or older. Any change of religion requires the mutual consent of both parents.

[¶ 42] The district court modified the proposed clause to state:

> Religion: The children have been raised Catholic and will continue to be raised as such. Each parent should encourage and whenever possible, ensure that the children attend mass on Sundays and on all holy days of obligation as well as religious education classes.

[¶ 43] Although the court revised the mother's original proposal, we conclude the modified provision is nevertheless improp-

er. The court in *McLemore* modified the religious provision in that case to read, "Both the mother and father should be vitally interested in seeing that their children get regular and systematic spiritual training. Whether it be by attending Sunday School each Sunday or Church or both is for the parents alone to decide." *McLemore*, 762 So.2d at 320. Similar language in this case would ensure the father is not required to take the children to particular services during his parenting time. We conclude the court erred by including the religious provision in this case, and we remand for the district court to include language clearly establishing that "this is for the parents alone to decide," or to omit the religious provision altogether.

## V

[¶ 44] The father argues the district court erred in not including mandated terms in the parenting plan.

[¶ 45] Section 14–09–30(2), N.D.C.C., provides, in part:

A parenting plan must include, at a minimum, provisions regarding the following or an explanation as to why a provision is not included:

a. Decisionmaking responsibility relative to:

(1) Routine or day-to-day decisions; and

(2) Major decisions such as education, health care, and spiritual development;

b. Information sharing and access, including telephone and electronic access;

c. Legal residence of a child for school attendance;

d. Residential responsibility, parenting time, and parenting schedule, including:

(1) Holidays and days off from school, birthday, and vacation planning;

(2) Weekends and weekdays; and

(3) Summers;

e. Transportation and exchange of the child, considering the safety of the parties;

f. Procedure for review and adjustment of the plan; and

g. Methods for resolving disputes.

[¶ 46] The father argues the parenting plan in this case lacked provisions related to subsections (b), (e), and (f) of the statute and the court failed to explain why these provisions were not included as required under N.D.C.C. § 14–09–30. Our review of the record shows these terms are indeed missing from the parenting plan. Under the clear language of the statute, the district court's failure to include these provisions was erroneous, and a remand is necessary for their inclusion.

## VI

[¶ 47] We reverse and remand with instructions for the district court to add the missing statutorily mandated parenting-plan provisions, and for the court to modify or delete the religious provision in the parenting plan. We affirm the remainder of the judgment.

[¶ 48] DANIEL J. CROTHERS, LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.

GERALD W. VANDE WALLE, Chief Justice, concurring specially.

[¶ 49] I agree with Parts I, II, III, V and VI of the majority opinion. Because I believe the provision regarding religion was unduly restrictive I concur in the result in Part IV of the opinion. Nevertheless, I adhere to my dissent in *Hanson v. Hanson*, 404 N.W.2d 460, 467 (N.D.1987) (VandeWalle, J., concurring in part and dissenting in part).

[¶ 50]   GERALD W. VANDE WALLE, C.J.