FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 18, 2022
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 39

| | |
|---|---|
| Leah Grace Taylor, | Plaintiff and Appellee |
| v. | |
| Aaron James Taylor, | Defendant and Appellant |
| and | |
| State of North Dakota | Statutory Real Party in Interest |

## No. 20210214

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Jay D. Knudson, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Olivia A, Jureidini, Grand Forks, ND, for plaintiff and appellee; submitted on brief.

Benjamin B. Freedman, Fargo, ND, for defendant and appellant.

**Taylor v. Taylor**
**No. 20210214**

**McEvers, Justice.**

[¶1] Aaron Taylor appeals from the district court's Findings of Fact, Conclusions of Law, and Order for Third Amended Judgment modifying his parenting time, limiting his decisionmaking authority, and finding him in contempt. We conclude the court did not clearly err in denying Aaron Taylor's motion to modify or in granting Leah Taylor's countermotion. We affirm.

I

[¶2] Aaron and Leah Taylor were married in 2008. They have two minor children: A.G.T., born in 2008, and L.A.T., born in 2011. The pair divorced pursuant to a settlement agreement which provided Leah Taylor with primary residential responsibility of both children, with Aaron Taylor to receive reasonable parenting time. The divorce judgment was entered in July 2018.

[¶3] In December 2019, the district court issued an order and entered an amended judgment, finding Aaron Taylor had violated the divorce judgment in numerous ways, including displaying emotionally abusive behavior toward the children. The court required Aaron Taylor to complete a chemical dependency treatment program and subjected him to a graduated parenting time plan. In June 2020, the court issued another order and entered a second amended judgment, finding Aaron Taylor had "willfully and persistently violated" the amended judgment based in part on a pattern of emotionally abusive behavior toward the children. The second amended judgment provided for a revised graduated parenting time plan, beginning with Aaron Taylor receiving supervised visitation[1] only.

[¶4] In December 2020, Aaron Taylor moved to modify parenting time, contending he had completed court-ordered drug and alcohol treatment. Leah

---

[1] We note that although the district court's order uses the term "visitation," this opinion utilizes the term "parenting time" to reflect N.D.C.C. § 14-05-22.

Taylor filed a countermotion seeking to eliminate visitation, for sole decisionmaking authority, and modifying parental rights and responsibilities, arguing Aaron Taylor's behavior had detrimentally affected the children.

[¶5]  Following an evidentiary hearing, the district court issued an order and a third amended judgment. The court acknowledged Aaron Taylor had completed a treatment program, but found Aaron Taylor's communications with the children had been "detrimental and devastating to the children's mental and physical health and well-being." The court noted concerns about Aaron Taylor "disparaging Leah to the children, disparaging Leah to third parties, sneaking communicative devices to the children, [having] unauthorized contact with the children through social media and chat rooms, and involving the children in disputes regarding parenting time." The court stated Aaron Taylor's actions "are against both children's well-being and are clearly very harmful to their mental, and emotional health." The court concluded Aaron Taylor's communications were detrimental to the physical and emotional well-being of the children and temporarily suspended Aaron Taylor's in-person visits and telephone contact, again revising the graduated parenting time plan. Aaron Taylor appeals.

## II

[¶6]  Aaron Taylor has attempted to appeal from the district court's order for third amended judgment. "Interlocutory orders and memorandum opinions are generally not appealable, but nonappealable interlocutory orders are reviewable in an appeal from a final judgment." *Lund v. Lund*, 2011 ND 53, ¶ 5, 795 N.W.2d 318. An attempted appeal from an order for judgment will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *Id.* A consistent amended judgment was entered in this case, and we treat the appeal as an appeal from the judgment.

## III

[¶7]  This Court has previously stated the standard for modification of parenting time as follows:

> To modify parenting time, the moving party must demonstrate a material change in circumstances has occurred since entry of the previous parenting time order and that the modification is in the best interests of the child. A material change in circumstances is important new facts that have occurred since the entry of the previous parenting time order . . . . [W]e recognized that parenting time between a parent without primary residential responsibility is presumed to be in the child's best interests, and a court should only withhold visitation when it is likely to endanger the child's physical or emotional health. We have further recognized that denying a parent without primary residential responsibility parenting time with a child is an onerous restriction, such that physical or emotional harm resulting from the visitation must be demonstrated in detail before it is imposed. Finally, when awarding or modifying parenting time the district court may not rely solely on the child's wishes in visitation enforcement and modification actions.

*Curtiss v. Curtiss*, 2017 ND 60, ¶ 5, 891 N.W.2d 358 (internal citations and quotations omitted).

[¶8]   "It is not the wishes or desires of the parents, but rather the best interests of the child that are paramount when considering modification of parenting time." *Curtiss*, 2017 ND 60, ¶ 6 (citing *Seibold v. Leverington*, 2013 ND 173, ¶ 19, 837 N.W.2d 342). Under N.D.C.C. § 14-05-22(2), the district court must "grant such rights of parenting time as will enable the child to maintain a parent-child relationship that will be beneficial to the child, unless the court finds, after a hearing, that such rights of parenting time are likely to endanger the child's physical or emotional health." A court's decision regarding parenting time is a finding of fact subject to the clearly erroneous standard of review. *Bredeson v. Mackey*, 2014 ND 25, ¶ 5, 842 N.W.2d 860. "A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made." *Seibold*, 2013 ND 173, ¶ 12.

## IV

[¶9]   Aaron Taylor argues Leah Taylor failed to meet her burden to show his parenting time would likely endanger the children. He contends Leah Taylor

"failed to even allege, much less prove, any harm likely to endanger L.A.T. as a result of Aaron's parenting time," and further argues Leah Taylor did not connect Aaron Taylor's conduct to any "negative mental or emotional impact" on A.G.T.

[¶10] Much of the evidence at the hearing was specific to A.G.T., who demonstrated a more obvious response to Aaron Taylor's behavior. However, there was also evidence of behavior directed toward L.A.T. and toward both children together. The district court found Aaron Taylor's conduct, "including denigrating Leah to the children, having unauthorized contact with the children, sneaking phones to the children, encouraging the children to download apps so that he could contact them undetected, encouraging the children to lie to their mother, [and] repeatedly telling the children that any problems with visitation are because of their mother," is "most definitely a danger to his children's physical or emotional well-being." The court noted numerous messages between Aaron Taylor and the children, in violation of the amended judgment, including:

> ". . . bummed I can't even get one single holiday with you two girls this year. . . . I've gotten zero time with you two and mom doesn't care"
> "it's not your fault it's your mom doesn't even think of me as your dad anymore"
> "Hey [A.G.T.], I wonder what would happen if you and [L.A.T.] had a sit-down talk with mom. Me not seeing you two is very unfair and no one should keep a child away from a parent!"
> "Ok sweetheart. . . . I just don't think mom is gonna (sic) change unless you and [L.A.T.] or someone take a stand."
> "I just wish mom would understand you two girls are my life and without you I don't have anything you know"
> "It won't end sweetheart as your mom wants me to just be someone you talk on virtual chats with only when she wants it. . . . she wants me completely out of your lives so whatever she wins I guess"
> "Sorry sweetheart you know if I could I would be there in a heartbeat but I really think it's time for you and [L.A.T.] to have a sit down talk with your mom and tell her what you guys want"

"That means I don't get to spend ANYTIME with you. No this needs to end. . . . your mom just needs to stop this"

Aaron Taylor also snuck a portion of the second amended judgment to A.G.T., with a note stating, "This is so you know . . . that the court doesn't have to change it. Your mom and dad can change anytime. This is so you are not lied to anymore!!" Aaron Taylor messaged L.A.T. online, saying, "I wanted to hurry get off the call with Kids First as I didn't want you to say anything about us communicating on Roblox."

[¶11] Aaron Taylor made several admissions at the hearing, on both direct and cross-examination. Aaron Taylor admitted to sneaking A.G.T. a cell phone, disparaging Leah Taylor, having conversations he should not have had with his children, and involving the children in parental conflict. Aaron Taylor admitted his messages put pressure on his children. Aaron Taylor further admitted to violating the court's order and that he knew it was a violation of the court order at the time of the communications. Leah Taylor testified that L.A.T. "really picks up on the attitudes of anybody around her" and "when A.[G.T.] would make comments . . . with her angry voice of we can't see dad because you are not letting us then L.[A.T.] would take that on and . . . decide to be . . . mad with A.[G.T.]." Leah Taylor testified Aaron Taylor "is realizing that L.[A.T.] is a little older now and that he can be using these tactics on her," evidenced by Aaron Taylor's unauthorized communications with L.A.T. through a chat feature on an online video game. The court found "Aaron's behavior is now contributing to serious mental health concerns for the parties' oldest child, who has been admitted to hospitals and mental facilities over the last several months due to self-harming and suicidal behavior." The court further found Aaron Taylor's communications "led to A.G.T.'s mental health decline in December 2020 through January 2021" and Aaron Taylor continued to exacerbate the problem when he "encouraged his daughter to not take doctor recommended medication or engage in therapy." The court found both children "have responded to Aaron's belligerent and cantankerous behavior with depression, suicidal ideation, and anger and aggression directed towards their mother."

## A

[¶12] Aaron Taylor argues the facts of this case are similar to our holding in *Curtiss*, 2017 ND 60. He frames the issue as "finding harm to one child, and then ascribing that harm to a second child without an independent detailed demonstration." In *Curtiss*, the district court recognized the older child required hospitalization after a visit with his father at the State Penitentiary. *Id.* at ¶ 10. However, the younger child was "ambivalent" about the visits and only "sometimes upset" by them. *Id.* at ¶ 12. The therapist who testified in *Curtiss* stated there was not the same strong correlation of emotional upset displayed by the younger child. *Id.* The mother also was not certain whether it was appropriate for the younger child to go to the State Penitentiary for visitation. *Id.* Although the court recognized the children were affected differently by the visits, we concluded the court clearly erred in finding continued supervised visitation was not in the younger child's best interest. *Id.* at ¶ 13. We affirmed the court's order regarding the older child but reversed the court's order restricting the father's visitation with the younger child, holding the court's findings were not supported by the record. *Id.*

[¶13] "A court is generally not required to do a line-by-line best-interest analysis for each individual child." *Schlieve v. Schlieve*, 2014 ND 107, ¶ 25, 846 N.W.2d 733. When the best interest factors are different for each child, such an analysis is permissible and may be necessary. *Curtiss v. Curtiss*, 2016 ND 197, ¶ 14, 886 N.W.2d 565. "A district court's factual findings should be stated with sufficient specificity to enable this Court to understand the basis for its decision." *Id.* at ¶ 10. Here, the court found A.G.T.'s mental health decline, self-harm, and suicidal ideations were a direct result of Aaron Taylor's ongoing behavior. The court further noted several examples of Aaron Taylor's behavior that make it likely that Aaron Taylor's parenting time would result in physical or emotional harm to L.A.T. The court found Aaron Taylor's behavior has been "detrimental and devastating" and "most definitely a danger" to the children's health and wellbeing. Unlike *Curtiss*, the record contains evidence to support the court's findings regarding the children generally and for each of the children individually. We conclude the court did not clearly err in finding

physical or emotional harm was likely to result from Aaron Taylor's parenting time with the children.

B

[¶14] Aaron Taylor also argues "Leah did not call any medical, mental health, or other experts to testify" regarding the impact of Aaron Taylor's behavior on the children. We have previously held that expert testimony is unnecessary for a showing that physical or emotional harm is likely to result from parenting time, and general testimony of a parent may suffice. *Hanson v. Hanson*, 404 N.W.2d 460, 465 n.2 (N.D. 1987) (expert medical or psychological testimony is not required to sustain the showing of physical or emotional harm). Sufficient evidence exists without expert testimony to support the district court's findings.

V

[¶15] Aaron Taylor next argues Leah Taylor "failed to show that the appropriate remedy is suspension or restriction of Aaron's parenting time." Aaron Taylor contends that, even if his conduct has a negative impact on the children, his "parenting time should be subject only to whatever minimal restrictions are necessary to prevent harm."

[¶16] We have stated "visitation between a non-custodial parent and a child is presumed to be in the child's best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child." *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896. However, "visitation with a noncustodial parent may be curtailed or eliminated entirely if it is likely to endanger the child's physical or emotional health." *Wilson v. Ibarra*, 2006 ND 151, ¶ 10, 718 N.W.2d 568. Visitation should be restricted only upon a showing by a preponderance of the evidence that unrestricted visitation is likely to endanger the child's physical or emotional health. *Id.* Complete denial of visitation to a noncustodial parent is a drastic measure that should be exercised only under the most compelling of circumstances. *Id.*

[¶17] In *Wilson*, we reversed the district court order denying the noncustodial parent any visitation with the child. 2006 ND 151, ¶ 7. We held the court provided no nexus or link demonstrating how the noncustodial parent's past problems would result in physical or emotional harm to the child. *Id.* at ¶ 14. We concluded the court's findings failed to "demonstrate in detail the physical or emotional harm to the child resulting from any form of visitation" and provided for no possibility of future visitation regardless of a change in circumstances. *Id.* We remanded for more detailed findings that any form of visitation would result in physical or emotional harm to the child or, in the alternative, an order attempting supervised visitation before all visitation was terminated. *Id.* at ¶ 15.

[¶18] The governing standard in a parenting time dispute is whether allowing parenting time would be likely to result in physical or emotional harm to the children. We have already concluded that it would. The record supports the district court's findings that parenting time between Aaron Taylor and the children is likely to result in physical or emotional harm. Unlike *Wilson*, where no alternative measures had been previously attempted, the court here attempted to provide, through the judgment, amended judgment, and second amended judgment, supervised parenting time between Aaron Taylor and the children prior to temporarily suspending parenting time. It was only as a result of Aaron Taylor "consistently" and "willfully" violating the second amended judgment in ways that were harmful to the children that the court resorted to a suspension of parenting time. In addition, the third amended judgment allows for the possibility of future parenting time through the graduated parenting plan, rather than permanent deprivation of parenting time, so long as Aaron Taylor abides by the terms of the judgment. We conclude the temporary suspension of Aaron Taylor's parenting time is not clearly erroneous and is supported by the evidence.

## VI

[¶19] Aaron Taylor argues the district court erroneously granted Leah Taylor sole decisionmaking authority.

9

[¶20] A district court's ruling on decisionmaking is also a finding of fact, subject to the clearly erroneous standard. *Wisnewski v. Wisnewski*, 2020 ND 148, ¶ 37, 945 N.W.2d 331. "A parenting plan must include a provision relating to decisionmaking responsibility, N.D.C.C. § 14-09-30(2)(a), and that responsibility must be allocated in the best interests of the child, N.D.C.C. § 14-09-31(2)." *Dick v. Erman*, 2019 ND 54, ¶ 14, 923 N.W.2d 137.

[¶21] Here, the district court ordered Leah Taylor "shall be granted sole decision-making authority over the children's education, non-emergency healthcare, and religion." Because Aaron Taylor and Leah Taylor could not agree on an allocation of decisionmaking authority, the court was required to allocate that authority in the best interests of the children. N.D.C.C. § 14-09-31(2). The evidence supports the court's finding that vesting Leah Taylor with sole decisionmaking authority was in the children's best interests. For example, the court found Aaron Taylor tried to discharge A.G.T. from a treatment facility against medical advice and encouraged her not to comply with a portion of her treatment. Based on the record in this case, the court did not clearly err in granting Leah Taylor sole decisionmaking authority.

VII

[¶22] Aaron Taylor finally argues the district court improperly gave Leah Taylor authority to supervise Aaron Taylor's future parenting time and telephone contact.

[¶23] A district court generally cannot delegate to anyone the power to decide questions of child custody or related issues. *Marquette v. Marquette*, 2006 ND 154, ¶ 10, 719 N.W.2d 321. This Court "do[es] not encourage the use of visitation provisions which give the custodial parent total control over the time and manner of the noncustodial parent's visitation." *Id.* Only in exceptional circumstances, and only when the custodial parent demonstrates a willingness to foster the parent-child relationship between the child and the other parent, should such provisions be utilized. *Id.* This Court has previously upheld reasonable visitations "conducted at the sole discretion of" the custodial parent. *Wigginton v. Wigginton*, 2005 ND 31, ¶ 10, 692 N.W.2d 108; *Wolt v. Wolt*, 2010 ND 26, ¶ 39, 778 N.W.2d 786 (district court's decision permitting custodial

parent to monitor phone calls between children and noncustodial parent was not clearly erroneous); *but see Paulson v. Paulson*, 2005 ND 72, ¶¶ 19-21, 694 N.W.2d 681 (concluding the district court impermissibly delegated authority to decide visitation to a third party when no finding was made that unrestricted visitation was likely to endanger the child's physical or emotional health).

[¶24] We have held visitation provisions controlled by a custodial parent should be "reserved for the most exceptional of circumstances." *Marquette*, 2006 ND 154, ¶ 10. Here, the district court found evidence that Aaron Taylor's "cantankerous behavior" and repeated violations of the amended judgment were "most definitely" a danger to the children's well-being. Additionally, Aaron Taylor had previously violated the court's judgment, amended judgment, and second amended judgment in a manner that was harmful to the children. We conclude Aaron Taylor's continued violations which are harmful to the children constitute exceptional circumstances warranting the monitoring of communications and parenting time provisions in the best interests of the children.

[¶25] This Court also requires the custodial parent "demonstrate[] that he or she is 'deeply concerned that the children, for the children's benefit, maintain a relationship with' the noncustodial parent." *Wigginton*, 2005 ND 31, ¶ 12. Leah Taylor testified she "want[s] Aaron to be in his girls' life," that "[h]e is dad" and she respects and honors his parenting. Leah Taylor further testified regarding potential for a family therapist to "work with Aaron and [Leah] and the girls." Leah Taylor also testified she wanted the parties to "work on [their] relationship" "to make this work for the girls." Leah Taylor's testimony indicates concern for the children's relationship with Aaron Taylor and willingness to foster and maintain that relationship.

[¶26] The record contains sufficient evidence for the district court to permit Leah Taylor to supervise Aaron Taylor's communications and potential parenting time with the children. Further, while we do not encourage giving one parent total control over parenting time, Leah Taylor was not awarded "complete discretionary authority" over Aaron Taylor's parenting time. The Third Amended Judgment provides in part, "Should Aaron violate the

restrictions regarding the letters or telephone contact more than twice, Leah is authorized to end the contract [sic] the children have with Aaron." Included with this provision are other court-ordered restrictions should Aaron Taylor violate the terms of the amended judgment. Any control Leah Taylor has over Aaron Taylor's contact is not within her sole discretion; instead, she may end Aaron Taylor's contact with the children only if Aaron Taylor "violate[s] the restrictions regarding the letters or telephone contact more than twice."

## VIII

[¶27] The parties' remaining arguments are either without merit or unnecessary to our decision. We conclude the district court's findings are supported by the record and we are not left with a definite and firm conviction a mistake has been made. The court's order and third amended judgment are affirmed.

[¶28] Jon J. Jensen, C.J.
    Gerald W. VandeWalle
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte